STEVENS, RESPONDENT, *v.* EQUITY MUTUAL FIRE INSURANCE CO., APPELLANT.

(No. 5,075.)

(Submitted March 2, 1923. Decided March 19, 1923.)

[213 Pac. 1110.].

*Fire Insurance—Reformation of Policy—Legal Defenses—Jury Trial—Equity—Judgment—Extent of Relief—Principal and Agent—Failure to Read Policy—Effect on Right to Recover.*

Fire Insurance—Reformation of Policy—Equity—Jury Trial.
1. Where in an action to recover on a fire insurance policy the plaintiff prayed that the policy be reformed in several particulars, and defendant, instead of standing upon the legal defenses inter-

1. Right to trial by jury in equitable cases, see notes in **Ann. Cas.** 1913D, 168; **Ann. Cas.** 1914C, 852; 15 **L. R. A.** 287.

posed, joined issue upon the facts by which plaintiff's right to equitable relief was sought to be shown and upon the establishment of which his right to recover depended, the cause was properly triable as one in equity and defendant was not entitled to jury trial upon the legal defenses to the action.

Equity—Judgment—Extent of Relief.

2. When a court of equity obtains jurisdiction of a controversy it may, if it grants the equitable relief, render judgment in relation to all matters involved and growing out of such controversy.

Fire Insurance—Reformation of Policy—Evidence—Sufficiency.

3. In an action on a fire insurance policy sought to be avoided on the ground that in his application for the policy plaintiff had stated that the building was situated on land owned by him in fee whereas it stood upon leased land, evidence *held* sufficient to justify a finding that plaintiff had stated to the agent of the defendant at the time the application was filled out by the agent, that the structure stood upon leased land and to warrant reformation of the policy to that effect.

Same—Knowledge of Agent Imputable to Company.

4. Where an application for a fire insurance policy was filled out by an agent of defendant company upon information given him by the insured, any error committed by the agent in stating the title or interest of the insured in the property is imputable to the company and will not avoid the policy.

Same—Failure to Read Policy—Retention Without Objection—Effect on Right to Recover.

5. *Held*, that insured who had stated to the agent of defendant company that the building sought to be insured stood upon leased land, had the right to rely upon the good faith of the company and the agent, and was not barred from recovery by his retention of the policy, without objection, in which it was erroneously stated that he owned the land in fee simple and which, in a mass of closely printed matter, provided that it would be void if the building was located on ground not so owned by the insured.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

ACTION by William W. Stevens against the Equity Mutual Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Mr. C. F. Holt* and *Mr. Fletcher Maddox,* for Appellant, submitted a brief.

The defendant was entitled to a jury on the issues of fact raised by the legal defenses. (*Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254.)

---

3. Reformation of insurance policy for mistake of soliciting agent, see note in 11 L. R. A. (n. s.) 357.

5. Failure of insured to read policy as precluding its reformation for mistake, see note in 20 Ann. Cas. 365.

[66 Mont. 461.]

If the plaintiff in the *Chessman Case* was entitled to a jury to determine his right to damages, although asking for the equitable relief of an injunction to restrain further acts, then by the same token, the defendant in this action would be entitled to a jury to determine whether it was liable for damages for breach of the contract or for money claimed to be due upon the contract though in the same action the plaintiff was seeking reformation of the contract sued upon. The reasoning of the *Chessman Case* is controlling, and we think decisive of the point made under consideration. (*Hughes* v. *Dunlap,* 91 Cal., 385, 27 Pac. 642; *Tesson* v. *Atlantic Mutual Ins. Co.,* 40 Mo. 33, 93 Am. Dec. 293.)

There was no sufficient proof of fraud or mistake to justify reformation. When a mistake is relied on it must be mutual to warrant reformation, or there must be mistake of one party and fraud of the other. (2 Joyce on Insurance, sec. 716; *Bryce* v. *Lorillard Fire Ins. Co.,* 55 N. Y. 240, 14 Am. Rep. 249; *Floars* v. *Aetna Life Ins. Co.,* 144 N. C. 232, 11 L. R. A. (n. s.) 357, 56 S. E. 915.)

In actions to reform insurance policies the rule is laid down in 2 Joyce on Insurance, section 716, in the following language: "But the proof must be clear, for if a doubt exists as to what statements the applicant actually made, or as to the intent of the parties, or if the evidence be materially conflicting, a reformation will not be decreed." (*Snell* v. *Atlantic Fire Ins. Co.,* 98 U. S. 85, 25 L. Ed. 52 [see, also, Rose's U. S. Notes]; *Hearne* v. *Marine Ins. Co.,* 20 Wall. (87 U. S.) 488, 22 L. Ed. 397 [see, also, Rose's U. S. Notes]; *St. Paul Fire Ins. Co.* v. *Sharer,* 76 Iowa, 282, 41 N. W. 19; *Farmville Ins. & Banking Co.* v. *Butler,* 55 Md. 233; *Balen* v. *Hanover Fire Ins. Co.,* 67 Mich. 179, 34 N. W. 654; *Harrison* v. *Hartford Fire Ins. Co.,* 30 Fed. 862; *Cooper* v. *Farmers Mutual Fire Ins. Co.,* 50 Pa. St. 299, 88 Am. Dec. 544; *Cooper* v. *Farmers' Mutual Fire Ins. Co.,* 50 Pa. St. 299, 88 Am. Dec. 544.)

If the agent inserted incorrect answers in the application it was within the power of the plaintiff to prevent results from

any such incorrect answers, by reading the paper. The defendant company did not have that power and was entitled to believe that the plaintiff had used reasonable diligence to see that his answers were correctly given. The agent is not charged with using any device that would cause a man of ordinary prudence to refrain from reading the application. (*New York Life Insurance Co.* v. *Fletcher,* 117 U. S. 519, 29 L. Ed. 934, 6 Sup. Ct. Rep. 837 [see, also Rose's U. S. Notes]; *Walker* v. *State Ins. Co.,* 46 Kan. 312, 26 Pac. 718; *Cuthbertson* v. *North Carolina Home Ins. Co.,* 96 N. C. 480, 2 S. E. 258.)

The building not being on ground owned by the insured in fee simple the policy by its express terms becomes invalid, and this would be true even though no written application had been made and the policy had been issued upon the personal request of the plaintiff and his oral statements at the defendant's office. The policy was issued November 27, 1916, and retained by the plaintiff without objection to its provisions until the institution of this suit. He had the policy in his possession for twenty-two months before the fire; he accepted and retained it without complaint. In the leading case of *Bostwisk* v. *Mutual L. Ins. Co.,* 116 Wis. 392, 67 L. R. A. 705, 92 N. W. 246, this subject is given extensive consideration both in the opinion and the annotations. If the insured was not the owner of the ground upon which his hall stood, he could then have called the defendant's attention to the departure from the understanding he claims to have had with the agent in respect to his title. This would have given the defendant an opportunity to cancel the policy and refund his premium. (See 1 Joyce on Insurance, par. 66.)

*Messrs. Norris, Hurd & Hauge,* for Respondent, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

Defendant was not entitled to a jury trial. This court has uniformly held that in equity cases neither party has an ab-

solute right to a trial by jury. (*Steiner* v. *McMillan,* 59 Mont. 30, 195 Pac. 836.) It is well established in this jurisdiction that when a court of equity takes jurisdiction of a controversy between parties it is its duty to render a final judgment in relation to all matters involved in and growing out of that controversy. (*Maloney* v. *King,* 30 Mont. 414, 76 Pac. 939.) It needs no extended citation of authority to show how thoroughly this principle is established in the jurisprudence of this country. (5 Joyce on Insurance, 2d ed., sec. 3508; *Tayloe* v. *Merchants Fire Insurance Co.,* 9 How. (U. S.) 389, 13 L. Ed. 187 [see, also, Rose's U. S. Notes]; *Imperial Shale Brick Co.* v. *Jewett,* 169 N. Y. 143, 62 N. E. 167.)

The application was prepared by agent of defendant and by his acts defendant was bound. (*Kansel* v. *Minnesota Farmers M. F. Ins. Co.,* 31 Minn. 17, 16 N. W. 430; *Insurance Co.* v. *Mahone,* 21 Wall. (U. S.) 152, 22 L. Ed. 593 [see, also, Rose's U. S. Notes]; *Malleable Iron Works* v. *Ins. Co.,* 25 Conn. 465; *Woodbury Savings Bank etc. Assn.* v. *Ins. Co.,* 31 Conn. 517; *Winans* v. *Allemania Ins. Co.,* 38 Wis. 342; *Rowley* v. *Empire Ins. Co.,* 36 N. Y. 550; *Brandup* v. *St. Paul Fire Ins. Co.,* 27 Minn. 393, 7 N. W. 735; *Spratt* v. *New Orleans Assn.,* 53 Ark. 215, 13 S. W. 799; *Woodbury etc. Assn.* v. *Charter Oak etc. Co.,* 31 Conn. 517; *State Ins. Co.* v. *Gray,* 44 Kan. 731, 25 Pac. 197; *German Ins. Co.* v. *Miller,* 11 Ky. Law Rep. 721; *Shelt* v. *German Ins. Co.,* 60 Mo. App. 644; *Meade* v. *Saratoga etc. Ins. Co.,* 81 App. Div. 282, 80 N. Y. Supp. 885; *Bennett* v. *Agricultural Ins. Co.,* 106 N. Y. 243, 12 N. E. 609; 2 Joyce on Insurance, sec. 508; 19 Cyc. 811.)

Neither by a provision in the application, nor by a stipulation to that effect in the policy, nor by the insertion in the policy of the usual nonwaiver clause, can the soliciting agent be made the agent of the insured. (*Bernard* v. *United Life Ins. Co.,* 12 Misc. Rep. 10, 33 N. Y. Supp. 22; *North British & Merc. Ins. Co.* v. *Curcthfield,* 100 Ind. 518, 9 N. E. 458; *Hart*

v. *Niagara Fire Ins. Co.,* 9 Wash. 620, 27 L. R. A. 886, 38 Pac. 213.)

Where the insured discloses facts respecting his ownership but agent inserts incorrect answers to questions, the careless or wrongful act of the agent binds the insured. (*Turner* v. *American etc. Co.,* 69 Wash. 154, 124 Pac. 486; *Mead* v. *Saratoga etc. Co.,* 81 App. Div. 282, 80 N. Y. Supp. 885; *Pacific Mutual Life Ins. Co.* v. *Van Fleet,* 47 Colo. 401, 107 Pac. 1087; *Union Ins. Co.* v. *Wilkinson,* 13 Wall. (U. S.) 222, 20 L. Ed. 617 [see, also, Rose's U. S. Notes]; *Loring* v. *Dutchess Ins. Co.,* 1 Cal. App. 186, 81 Pac. 1025; *Rockford Ins. Co.* v. *Farmers State Bank,* 50 Kan. 427, 31 Pac. 1063; *Morotock Ins. Co.* v. *Pankey,* 91 Va. 259, 21 S. E. 487; *Bateman* v. *Lumberman's Ins. Co.,* 189 Pa. St. 465, 42 Atl. 184; *Hunt* v. *Merc. Ins. Co.,* 22 Fed. 503; *Mutual Fire Ins. Co.* v. *Hammond,* 106 Ky. 386, 50 S. W. 545.)

Retention of policy without objection is not an issue in this case. It is nowhere pleaded in the answer of the defendant that plaintiff is estopped from claiming a mistake in the policy by reason of the fact that he retained the policy. (*Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994.) Even though the point were raised by the answer of the defendant, it would be without merit. The case of *Bostwick* v. *Mutual Life Insurance Co.,* 116 Wis. 392, 89 N. W. 538, was practically repudiated, although not expressly overruled, in *Welch* v. *Fire Association of Philadelphia,* 120 Wis. 456, 98 N. W. 227. A careful reading of this case will commend it to the court. (See, also, *Germania Life Ins. Co.* v. *Lukenheimer,* 127 Ind. 536, 26 N. E. 1082.)

MR. COMMISSIONER FELT prepared the opinion for the court.

The plaintiff brought this action to reform a policy of fire insurance and to recover the amount due thereon after loss of

the property covered by the insurance.    Before the witnesses were sworn and any testimony was offered in the case, the defendant requested that a jury be impaneled for the trial of the case, which request was denied by the court upon the ground that the action was one in equity, and thereupon the court proceeded with the trial sitting without a jury.    Honorable William A. Clark, one of the judges of the fifth judicial district, presided at the trial.    Before findings of fact were made and conclusions of law rendered by the court, Judge Clark died.    Thereafter, by stipulation of the parties, the cause was submitted to Honorable Charles A. Rose, judge of the eighteenth judicial district, upon the pleadings, files, and a transcript of the testimony, to be by him considered and passed upon with like effect as if he had presided at the trial.    Thereafter findings of fact and conclusions of law were duly rendered favorable to the plaintiff and judgment duly entered thereon against the defendant, ordering the policy reformed and for the entire amount of risk assumed by the defendant under the policy. The appeal is from such judgment.

Briefly stated, the facts giving rise to this cause of action are as follows: On November 27, 1916, the plaintiff had practically completed a one-story shingled roof hall in the vicinity of the town of Goldstone in Hill county, Montana.    On that date a soliciting agent of the defendant insurance company having met the plaintiff solicited insurance upon his hall.    Defendant's agent in company with the plaintiff inspected the building.    The plaintiff desired $1,000 insurance on the building and $300 on the piano and other personal property contained therein.    Defendant's agent filled out an application for the desired insurance which he submitted to the plaintiff for signature.    Plaintiff alleges and testified that he did not read the application before signing.    This application was forwarded by the agent to the head office of the defendant corporation at Great Falls, Montana, and the policy of insurance forming the basis of this action was thereafter issued by its authorized offi-

cers. The face of the application, omitting nonessential parts, is as follows:

| | Valuation. | Amount Insured. | Equity Rate. | Advance Deposit. |
|---|---|---|---|---|
| "On one-story shingle-roof hall dwelling house............ | $1,500 | $1,000 | $270 | $27.50 |
| On piano.................. | 450 | 300 | 270 | 8.10 |

Situated on 160 acres, section 2, Tp. 36, R. 9, county of Hill, State of Montana,                                         191—

\*   \*   \*   Dated this 27th day of Nov., 1916.

WILLIAM W. STEVENS, Applicant.

E. SPRIGG, Witness."

On the back of the application, in addition to some fine print not applicable to the class of property covered by this policy, there were fourteen questions apparently addressed to the applicant and three to the agent, as well as a plat locating the property insured with reference to exposures by other buildings. The questions addressed to applicant, material in this case, and the answers, are as follows:

"6. Are you sole owner of property insured?   Yes.

"7. How much land do you own here?   320."

"19. Is the house occupied for private dwelling only? Hall."

Those to the agent:

"Did you make a personal survey?   Yes.

"Do you fully recommend this risk?   Yes.

"Remarks: Fair risk."

The policy, when issued, contained the following description of the property insured:

Sum
Insured.   Deposit.

"$1,000.00   27.50   On the one-story frame building and its additions thereto, \*   \*   \* while occupied as a dwelling house, and marked No. —— on diagram.

$ 300.00    8.10    On household and kitchen furniture useful and ornamental, including beds, bedding, linen, carpets, firearms, bicycles, family wearing apparel, jewelry in use, * * * printed books and music, musical instruments, * * * bric-a-brac, statuary, works of art, * * * all while contained in the above described dwelling house.

* * * All property while owned by the insured and situated on farm about —— miles distant from the town (or village) of Goldstone, county of Hill, state of Montana, on 160 acres, section 2, township 36, range 9," This description is contained in a rider pasted on the face of the policy. There was also reference in the printed matter on the face of the policy to conditions printed on the back, which by such reference were made a part of the policy. Therein, among 123 lines of closely printed matter, may be found the following: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be a building on ground not owned by the insured in fee simple."

The plaintiff received the policy by mail. He testified that he did not look at it until after the loss occurred. The building and the personal property were completely destroyed by fire on the 20th of September, 1918. The defendant denied liability under the policy, and the complaint in this action was filed May 13, 1919. Among other things, the plaintiff alleges that by mutual mistake the policy was not in accordance with the agreement between the plaintiff and defendant's agent. It is admitted that the building was not used as a dwelling-house and that the plaintiff was not the owner in fee simple of the ground on which the same was constructed. Likewise, the personal property is not all described in the policy. The defendant by its answer denied that there was any mistake, and therefore no right on the part of the plaintiff to have the

policy reformed. Several affirmative grounds of defense were also tendered by the defendant. It is not necessary to point these out in detail.

The trial court by its judgment ordered the policy reformed so as to include the following language: "$1,000 on the one-story frame building  *  *  *  while used as a public hall. $300 on all public hall furniture, useful and ornamental, including musical instruments, benches, chairs, stove, couch and platform for music stand, all while contained in the above-described public hall,  *  *  *  said insured's interest in the land upon which said building, piano, stove, couch, platform for music stand and benches are or will be situated being only a leasehold," and by striking out all parts inconsistent therewith. It also made findings favorable to the plaintiff upon all material issues and ordered judgment against the defendant for the sum of $1,300, with interest thereon at the rate of 8 per cent per annum from the twentieth day of September, 1918.

The defendant's appeal from this judgment presents the following questions for the consideration of this court: (1) Was the defendant entitled to a jury upon the issues arising upon the legal defenses to the action? (2) Are the allegations and proof sufficient to entitle the plaintiff to reformation of the policy? (3) Was the plaintiff negligent in failing to read the application before signing? (4) Was the plaintiff negligent in failing to inspect his policy on receipt and retaining it without objection to any of its provisions, particularly as to his ownership in fee of the ground upon which the hall stood? (5) Was the value of the property destroyed sufficiently established by the evidence?

We will consider each of these questions in their order.

1. The defendant contends that by reason of the legal de-[1] fenses interposed by its answer, the cause should have been tried to a jury. It concedes, however, that an action to reform an insurance policy is one in equity. Had it been content to stand upon the legal defenses solely, it would have been en-

titled to the privilege of trying the issues presented thereby to
a jury. But it joined issue upon the facts by which the plain-
tiff sought to establish his right to equitable relief. Indeed,
practically the only question presented to the trial court or
argued seriously in this court is whether or not the plaintiff
was entitled to a decree reforming the policy in question. The
legal ·defenses were either abandoned expressly, or were sup-
ported by evidence of such slight weight that appellant makes
no serious contention of error on the part of the trial court in
disregarding them. If the plaintiff was entitled to a reforma-
tion of the policy he was entitled to recover the full value of
the property destroyed. Without reformation, he could re-
cover nothing. No authority is required to support the
proposition that an insurance policy may be reformed in the
same manner as any other contract and that to obtain this
relief the plaintiff must invoke the aid of a court exercising
[2]  equitable jurisdiction. When a court of equity obtains
jurisdiction of a controversy, it may, if it grant the equitable
relief, maintain jurisdiction and render that further judgment
which properly follows thereupon. (*Imperial Shale Brick Co.*
v. *Jewett,* 169 N. Y. 143, 62 N. E. 167; *Tayloe* v. *Merchants' F.
Ins. Co.,* 9 How. 390, 13 L. Ed. 187 [see, also, Rose's U. S.
Notes]; *Maloney* v. *King;* 30 Mont. 414, 76 Pac. 939.)  In this
state a party is not entitled to a jury trial in a court of equity
as matter of right. (*Steiner* v. *McMillan,* 59 Mont. 30, 195
Pac. 836.)

The appellant cites *Chessman* v. *Hale,* 31 Mont. 577, 3 Ann.
Cas. 1038, 68 L. R. A. 410, 79 Pac. 254, as authority for its
claim of right to a jury trial. That was an action to have a
nuisance declared, for damages and to enjoin the continuance
of the nuisance. The trial court, by reason of the injunctive
relief sought, treated the action as one in equity and rejected
certain findings of the jury favorable to the plaintiff and
made findings favorable to the defendant. For this action
on the part of the trial court the cause was reversed, this
court, through the opinion of Mr. Commissioner Poorman,

holding that the plaintiff was entitled to trial by jury of the legal issues as in an ordinary action at law, and that the prayer for equitable relief did not deprive him of this right. It will be observed, however, that the order of presenting the legal and equitable phases of that case and the case at bar are reversed. In the *Chessman Case* the plaintiff first had the burden of establishing that the defendant had maintained a nuisance to the plaintiff's damage. This part of the case was purely legal. The equitable relief was only incidental and could not be granted until the legal cause of action was established. In the present case the plaintiff first had the burden of establishing his right to equitable relief, namely, reformation of his policy. The defendant by his answer put in issue the right of the plaintiff to this relief, and thereby deprived himself of the right to a jury trial.

2. The next question is whether or not the pleadings are sufficient to entitle the plaintiff to a reformation of the policy. The trial court ordered reformation of the policy in three material respects: (a) In describing the building covered by the policy as a public hall rather than a dwelling-house; (b) by adding an indorsement on the policy to the effect that the plaintiff's title to the land on which the building was situated was that of lessee, rather than owner in fee simple; and (c) in completing the description of the personal property.

The application itself plainly described the building upon which the plaintiff desired insurance as being a hall. The word "dwelling" was stricken out. It was then obviously a mistake to make the policy cover "the one-story frame building * * * while occupied as a dwelling house." The defendant conceded this during the trial, and no further discussion is necessary.

Whether the reformation with respect to the plaintiff's title [3] was proper will require more careful consideration. It is alleged in the complaint that it was the intention by both the defendant and the plaintiff that the description of the property insured by said defendant should be set forth in said insurance

policy in language contained in the order of the court reform-
ing the policy, including plaintiff's title to the land, as pre-
viously set forth in this opinion. The plaintiff testified as to
his conversation with the agent of the defendant company at
the time the contract for the insurance now in controversy was
being negotiated. This testimony is sufficient to support the
findings of the court in all material respects. The agent,
E. Sprigg, testified as a witness in behalf of the defendant and
denied the conversation detailed by the plaintiff. He did not
attempt to relate any of the conversation with reference to the
plaintiff's title. So far as may be gathered from his testimony,
he made no inquiry in that regard further than to obtain in-
formation for filling out the blank application. The trial court
found that the plaintiff told the agent of defendant that the
building was on leased land. It cannot be said that the evi-
dence preponderates against this finding. We are satisfied
that the pleadings and proof were sufficient to warrant the
reformation, both as to the plaintiff's title in the land, and the
description of the personal property.

The defendant admits that E. Sprigg was its agent. The
[4] company will be regarded as having the same knowledge
of the condition and situation of the property as possessed by
the agent transacting the business. Any error or neglect on
the part of either the agent or the company in stating the title
or interest of the assured will not avoid the policy. (*People's
F. Ins. Assn.* v. *Goyne,* 79 Ark. 315, 9 Ann. Cas. 373, 16
L. R. A. (n. s.) 1180, 96 S. W. 365, and cases cited in note;
*Wright* v. *Fire Ins. Co.,* 12 Mont. 474, 21 Pac. 87.)

3. A great deal is said by both parties about the application,
which the plaintiff states he signed without reading. The ap-
pellant contends that the failure of this application to contain
a complete and technical description of the property to be in-
sured, including the title of the plaintiff to the land on which
the building was situated, was due to the carelessness of the
plaintiff in failing to read the application. The respondent con-
tends that some sort of fraud was perpetrated by the defend-

ant's agent in not correctly inserting the answers to questions given by the plaintiff. There are many cases reported where the application prepared by the agent for signature by assured contains untruthful statements, although the assured has given truthful answers to the agent. We fail to find any such situation in this case. The question was asked: "Are you the sole owner of the property insured? A. Yes." It was the building and the personal property that was insured, and the plaintiff was the sole owner of this property. It would have been a simple matter to have asked the question: "Are you the owner of the land on which the building is constructed?" But no such question was asked. Instead, they ask: "How much land do you own here?" This could refer to the land on which the building was situated, or it might have referred to lands generally. As a matter of fact, the plaintiff owned 320 acres of land 3½ miles from the hall. The answer stated that he owned 320 acres. If the plaintiff had filled out the application himself after carefully reading the same, we cannot see how the truth would have compelled any different answer. If the officers of the company who issued the policy were deceived, it was because the question was not sufficiently definite to elicit the desired information.

There are certain things about the application itself that should have put the officers of the company upon inquiry before issuing the policy in question, had they considered the plaintiff's title to the land of serious importance. On the face of the application it states that the hall is situated on 160 acres of a particular section, without designating any particular subdivision of the section. This should have suggested the question as to why the situation of the hall was not stated as being on 320 acres, if the 160 acres was a part of the 320. This question was asked of the agent on cross-examination. He answered that he was attempting to describe the location of the hall in a particular part of the section. However, he did not do so. The quarter-section upon which the building was situated was not designated in any manner.

Furthermore, the agent admits that on the same day he took an application for insurance on a store building belonging to J. R. Hoar, situated on the same quarter-section as the hall. A policy was issued as a result of this application. This alone ought to have put the agent upon inquiry as to the title. Certainly each party could not individually have been the sole owner of the tract in fee simple.

It will be noted that the agent on the application, under the head of "Remarks," passed on the requested insurance as a "fair risk." Just what mental reservation caused the risk to be classed as "fair," after he had recommended it, does not appear. The company ought to have called for his reasons. But it did not. The officers of the company do not appear to have exercised much care in passing upon applications for insurance. H. A. Reeve, the assistant secretary of the company, testified in its behalf. He testified on cross-examination that the plaintiff's application should have been rejected. He says: "The application was taken, and the stenographer who wrote the policy must have overlooked the fact that it was a hall." Apparently all that was expected of the officers who passed on the application and signed the policy was to see that the signature of insured was attached to the one and then fix their own names to the policy prepared by a stenographer.

4. The most difficult legal question connected with the entire [5] case is whether the plaintiff, by retaining the policy without objection to its provisions with respect to his ownership in the land, was bound by the conditions in that regard. This question has received the attention of many courts of last resort in this country and in England. The decisions are far from being in harmony. By far the greater number, however, hold that the insured is not bound to search through the mass of printed matter on his policy for some clause that makes the policy void to which he must promptly object or forever hold his peace. He has a right to rely upon the good faith of the agent and the company. It is not carelessness on his part to suppose that a policy has been issued that will give him pro-

tection under the state of facts that he has related to the company. He is not then bound to discover every condition which "crouches unseen in the jungle of printed matter with which a modern policy is overgrown," designed to make a defense for the company, after the loss has occurred against which the insurance professes to guard. (*Van Schoick* v. *Niagara F. Ins. Co.*, 68 N. Y. 434.) Many of the authorities upon this question are gathered in the note to *Suravitz* v. *Prudential Ins. Co.*, reported in L. R. A. 1915A, 273 (244 Pa. 582, 91 Atl. 495).

The case of *Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 80 Pac. 609, is cited by appellant to the contrary. We realize that much is said in that case which is in apparent conflict with what we have just stated. However, that case is clearly distinguishable from the case at bar. There the condition, which was held to be binding upon the assured when he accepted the policy, was the simple matter of fixing the dates upon which the premiums became due. In the present case the condition, if given effect, avoided the policy from the beginning. The cases cited in the note in 16 L. R. A. (n. s.) 1201 *et seq.* emphasize this distinction. Much of the reasoning in the *Collins Case* was not necessary for a determination of the question there presented. What we say in this opinion, so far as it is in conflict with the reasoning of the *Collins Case* is supported by the overwhelming weight of authority.

The defendant in this case illustrates the general attitude of insurance companies towards avoiding clauses in policies similar to the one now under consideration. After the loss occurred, it took the position that the policy was void from the beginning and tendered back to the plaintiff the entire amount of the premium. The witness Reeve, secretary-treasurer of the company, was asked what it would have done had the discovery been made before the fire that the building was on leased land. He answered: "We would have canceled the policy and returned the premium on a *pro rata* basis." This was in fact done in the case of J. R. Hoar's policy. Under

[66 Mont. 461.]

the same theory it would have retained all of the premium, had the term of the policy expired before a loss occurred. The attitude is one of, "Heads I win, and tails you lose." The inconsistency of this position cannot be upheld. If the policy could earn premiums on a *pro rata* basis, it must be held to have protected the assured.

5. The proof as to the value of the property destroyed is questioned by the appellant. Whatever our personal opinion might be as to the value of the property, the findings of the court are supported by sufficient evidence. The building did not cost the plaintiff $1,000 for material and hired labor. But he performed a large part of the labor himself. Other labor was donated. Witnesses who qualified to testify as to value fixed it at $1,500 in its finished condition. The piano cost $203, nearly two years before the fire. The court fixed its value at $240. No reason is shown for this increase in value. However, the other personal property was fixed at $75. The evidence could have justified a greater sum as the value of this part of the property. On the whole, we think the evidence sufficiently establishes the value of all the personal property to have been at least $300, the amount of the insurance.

We therefore recommend that the judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

*Affirmed.*