# WATKINS VS. WASSELL.

According to the true construction of the decree rendered in this cause, as reported in 15 *Ark. Rep.* 72, no lien was established in favor of the complainant on lot 4 and east half of lot 5, for the payment of $185 32, balance due him for repairs upon the premises.

It is a rule in the construction of statutes that the expression of one thing is sometimes the exclusion of another; and so, when the Legislature has enumerated a variety of cases in which creditors shall be allowed to receive interest, it may safely be assumed that it was not intended to permit them to receive it in the cases not enumerated.

By our statute, (*sec.* 1, *chap.* 99, *Dig.,*) the whole subject of the allowance of interest is regulated, so far as regards contracts for the payment of money, express or implied; and it can only be recovered upon contracts for the payment of money in the cases specified in the statute, leaving the recovery thereof in those cases where the liability is tortious in its character to be governed by the general principles of the law applicable to them.

Where a claim is founded upon an open account, the items unliquidated and uncertain in amount, and there is no promise to pay interest, the liability to pay interest at all, must be derived from that clause of the statute, which allows it on money "withheld by an unreasonable and vexatious delay of payment," etc., as to which it is impossible to lay down any definite rule: and each case must necessarily depend, to some extent, upon its own circumstances.

W., a mechanic, made a contract to repair certain buildings, and had partly executed it, when the property was sold under execution. W. continued to carry on the work after the sale; demanded payment for the whole repairs, as well those made before as after the sale, of the purchaser, upon the ground that he had a mechanic's lien therefor; filed his bill to subject the property to such lien: the Court, on appeal decided that the purchaser's title was paramount to the mechanic's lien, but that the purchaser was personally liable for such repairs as were made after his purchase, and before he notified W. that he would not be responsible for them; and remanded the cause to ascertain the amount of such repairs: *Held,* that the liability of the purchaser, as thus declared by this Court, is *res adjudicata;* that the purchaser was not liable for interest on the amount of the repairs chargeable to him, from the time when the work was completed, nor from the time when his personal liability was so declared by this Court, but only from the time when, by reference to, and report of the master, such amount was ascertained.

And as, during the progress of such proceedings, it appeared that the purchaser was in possession of, and received the rents for, a store-house, partly on the lot so purchased by him, and partly on another lot to which such mechanic's lien was adjudged good, of which fact both parties were ignorant at the time, it was further hold, that he was liable for interest upon the rents so received from the time when the fact was brought upon the record and a specific demand made for such rents.

*Appeal from the Chancery Court of Pulaski county.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

WATKINS & GALLAGHER, for the appellant, argued this cause at length, as to the personal obligation of the appellant to pay for the repairs; and as to the knowledge of the appellee, that after the purchase of the premises by the appellant, he did not intend to become responsible for such repairs; and as to the appellee's claiming interest for some ten years, on the ground of a vexatious delay of payment, of an alleged debt, not due by contract, and the amount of which was never ascertained, the payment of which was never demanded, and the existence of which, with a full knowledge of all the facts, was never suspected by the appellee, until the hypothetical suggestion in 15 *Ark.*, that there might be such a liability on the part of Mr. Watkins, upon a supposed state of case, about which an enquiry was directed. In strictness, there should be no interest in any event, on a demand of this nature, until the amount had been ascertained and fixed by the account and the decree of the Court below.

The record abundantly shows that the rent of the 5 feet of the east tenement, part of " thirteen feet" was merely nominal; and that all, or nearly all of it, was expended in repairs. If the appellant was an involuntary and unconscious trustee of that 5 feet, for the appellee, he administered that trust faithfully.

In the authoritative opinion of this court [the one delivered by Judge Walker] not a syllable is said in the order for reference, about an account of rents of this 5 feet, between the ap-

pellee and appellant. The order of reference by the Chancery Court is silent as to it. Clearly the master had no authority to make any enquiry, or report as to such rents If any question as to the rent of the 5 feet was ever in the case at all, it had got out of it. It was a question of personal liability between Mr. Watkins and the appellee, under the statute for use and occupation, for which a distinct and independent remedy should have been sought.

Though a minor and comparatively unimportant consideration, the decree in favor of the appellee should be reversed, because of the allowance of interest to him, in his claim before its final ascertainment, and because of the erroneous decree to him for rents of the 5 feet.

PIKE & CUMMINS, for the appellee.

The report of the master in this case, shows the sum of $924 71, due Wassell in 1845, for repairs alone. The Master omitted to allow interest upon that sum, from the time the work was done, or the *original* suit commenced. For this omission, the complainant filed his exceptions to the Master's report. The court, in rendering a decree against Watkins, charged him with interest from the date of the decision of the Supreme Court, as of January 1st. 1854—whereas, Wassell claims interest on that amount from the date the work was done, or from the commencement of the *original* suit, until the rendition of the decree; because, the amount of the bill of work was due in August, or September, 1845. We contend that Wassell is as much entitled to interest, as of 1845, as he is to the principal debt, for work done at that date—because, both must *relate* back to that date, or he would be entitled to no interest at all; for, clearly, he obtained no *new* right under that decision; it simply declaring what were the rights of the respective parties, from the *inception* of their particular interest. Why the chancellor took this point of time, to commence to charge interest against Watkins, is a mystery to us. Why not have taken the 1st of January, 1851, when the case was submitted? Would not that

have been more proper, if any action of the Supreme Court could change the *rights* of parties. But surely none will claim they so intended. It is clear Wassell had no greater or more equitable right then, than he had when the work was completed, and Watkins commenced to derive benefit from the same, or suit commenced. Watkins has received the benefits arising from this work and labor, for a period of near eleven years. Then why should not Wassell be allowed interest upon his debt? Or, is this a case that the benefits to be derived *are all to be on one side?* What right has Watkins to the rents and income of this property, made of value only by Wassell's labor and means, without any compensation to him for the same? To say nothing of the well settled principle of law on this point, where is the justice of it? That Wassell is entitled to interest from September, 1845, up to the rendition of the decree, is, we think, beyond cavil or dispute.

The Statute, *sec.* 1, *ch.* 90, *Rev. Stat.* gives interest "on all moneys due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts."

This provision defines, with perfect accuracy, the case before the court and the conduct of the defendant. Clearly, unless the entire decision of this court is based upon wrong principles, it was the duty of Watkins to liquidate and pay the debt, when the demand by suit was made, if not before.

The necessities of the times have forced the courts and legislatures to abandon the once existing prejudice against the allowance of interest. Interest is due of right, from the time the party in conscience was bound to pay the principal—and this applies equally to rents, as other liabilities. 6 *Harr. & J.* 529; 2 *Call* 249.

And courts of chancery charge interest according to the *eqities of the* case—even against mere trustees. 6 *J. C. R.* 620; 4 *Dessau.* 110; 1 *McCord's Ch. R.* 213, 220. 7 *Dana,* 201. 7 *Dana,* 240, 495. 9 *Gill* 115. 5 *Dana,* 438; 469. 4 *Harr. & McHen.* 40. 6 *John. Ch. R.* 21. 2 *Munf.* 505.

The principle in regard to charging Trapnall's estate with interest is identically the same as the one affecting Watkins.

There was another question referred to the Master, " to ascertain how much rents had been received, or ought to have been received, on the " 13 feet " ordered to be surveyed, etc., page 26 of *present transcript*. The Master states, " that, in accordance with the *evidence on file*, and the surveyor's report," (which is admitted by all the parties to be correct) he found that Watkins had, or ought to have received the sum of $372 87 on the 5¼ of the " 13 feet," ordered to be surveyed; the rents from which were by this court declared to belong to Wassell, 15 *Ark. p.* 89.

It will be seen from the evidence that the eastern store room, in which is located this 5¼ feet, was rented by Mr. Watkins for $200 per annum; one-fourth of which Wassell was entitled to; and for which Mr Watkins ought to account for the 12 years he had the possession and benefit of it.

We further claim that Wassell is entitled to, and ought to be allowed interest at the rate of 6 per cent. per annum, upon each respective year's rent, as it became due, as money belonging to him, and unjustly held and detained for him, by Watkins, he having had the benefits of money clearly belonging to Wassell, and refused to pay the same.

As to the appeal against Trapnall, it is contended that the court found, from the Master's report, and so decreed, in the original cause, against the ware-house property, and not against Trapnall, as follows:

" And it appearing from said report that the work done by said John Wassell on said warehouse, on Lot No. 4, and the *east part* of Lot No. 5, now amount, with interest from August, 1845, to the sum of $685 32; and that Trapnall has received of rents of that property over and above repairs, the sum of $500."

This much then, $685 32 upon this *warehouse property is fixed and certain*, having been in all things affirmed by this court.

How then can the sum of $685 32 be disposed of so as to

*release the property condemned*, but by payment of that sum with interest, from the rendition of the decree until paid?

The Master's report showed Trapnal to have *then received* of rents belonging to Wassell the sum of $500, over and above all repairs. Upon this showing, the court decreed against him, *personally* for that amount, leaving a balance of the decree *still in force against the warehouse property*, of Trapnall's interest, of $185 32, which must be extinguished by the accruing rents. The court declared Trapnall *a trustee* for Wassell, in regard to the receiving of rents in this case, until his claims were paid. *Page* 210 *original transcript*. From all of which, he, Trapnall appealed. But on said appeal, all things declared in decree were *affirmed*, as to him.

The sum, then, of $185 32, *remaining* against Trapnall's interest in the property, as a lien for repairs, and to be paid off by the rents, *is still due and unpaid*. Trapnall having received this amount as such trustee for Wassell, and so admitted, he must account for the same, together with 6 per cent. interest from the date of the decree, August 8, 1850, until paid.

Mr. Justice COMPTON delivered the opinion of the Court.

This cause was before this court at a former term, when the decree of the Chancellor was affirmed as to the defendant, Trapnall, and reversed as to Watkins. 15 *Ark*. 89. The cause was then remanded for further proceedings, and is now here again.

After the mandate of this court was entered of record in the court below, Wassell exhibited his bill of supplement and revivor, to which he made the administratrix of Trapnall a party. The allegations in the bill, which have a bearing on the questions involved, are, in substance, that Wassell filed his original bill on the chancery side of the Pulaski Circuit Court, against Trapnall, (since deceased), Watkins, the Bank of the State and others; the object of which was to establish and enforce a lien in favor of Wassell, upon lots 4, 5 and 6, in block 2, east of the Quapaw line, in the city of Little Rock, and the improvements

thereon, for the payment of certain sums due for repairs made upon the premises, by Wassell, under contracts with Richard C. Byrd, William J. Byrd, and the Bank, and to have the rents and profits applied to the payment of such sums as might be found due him for repairs. That after proceedings regularly had, the cause was heard, and the court decreed that Trapnall owned and had title in fee-simple to lot 4, and the east half of lot 5, subject to an equitable lien in favor of Wassell, for repairs, amounting to the sum of $685 32; which was declared paramount to any incumbrance in favor of the other parties to the suit, and that Wassell was entitled to have possession of the property, and receive the rents thereof, past and future, until said sum should be fully paid; and it appearing to the court that Trapnall had then received nett rents to the amount of $500, it was decreed that he pay that amount to Wassell, still leaving a balance of $185 32, to be paid out of future accruing rents.

And that it was further decreed, that Watkins had title in fee simple to lot 6, and twelve feet on the west side of lot 5, and the improvements thereon, subject to a like equitable lien in favor of Wassell, for repairs made upon the premises, amounting to the sum of $2043 71, and that Wassell was entitled to have possession and receive the rents, as well those which had, as those which might thereafter accrue, until the last mentioned sum should be paid--which orders and decrees were submitted to and remained in full force, except as to the defendants, Trapnall and Watkins, who severally, in due form of law, prosecuted an appeal to this court, which resulted in an affirmance of the decree in all things, as to Trapnall; and a reversal as to Watkins, with instruction to the court below to ascertain the value of the work done upon lot 6 and 12 feet of lot 5, and the buildings thereon, purchased by Watkins, after his purchase, and prior to any notification by him to Wassell, that he would not be responsible for repairs, and to render a decree against Watkins, in favor of Wassell, for the same. That the defendant, Trapnall, after his appeal to this court, entered into recognizance, whereby the execution of the decree against him

was and still is suspended; that Trapnall, in his life-time, and his administratrix, since his death, had continual possession of lot 4, and east half of lot 5, and the buildings thereon, and received all the rents and profits arising therefrom, which amounted to more than the sum of $185 52, with interest from the date of its ascertainment, being the balance due for repairs after deducting the sum of $500, decreed against Trapnall, as above.

The bill further alleges that there was a strip of land 13 feet in width, of the whole length of lot 5, lying between the east half of said lot, owned by Trapnall, and the 12 feet on the west side of said lot, owned by Watkins, to which neither of them had ever had title—the title remaining subject to the rights of Wassell, in William J. Byrd, Richard C. Byrd, and the Bank, defendants to the original bill in this cause; that the store house, owned by Watkins, which was supposed to stand upon lot 6, and 12 feet of the west side of lot 5, covered and included 5 feet 2⅛ inches in width, of said 13 feet, the whole length of lot 5, on the west; and the warehouse owned by Trapnall, which was supposed to stand on lot 4, and the east half of lot 5, covered and included 7 feet 9 ⅔ inches of said 13 feet, on the east side thereof, and that Watkins and Trapnall, since the date of their several purchases of the tenements above mentioned, received the rents and income from said 13 feet, in the respective proportions above indicated, and refused to pay over or account for the same to Wassell.

The bill prays that Watkins and the administratrix of Trapnall be ordered to pay to Wassell the rents respectively received on the 13 feet, as a general credit on the entire value of the repairs, and not upon the amounts for which they were otherwise liable; and that the original decree, affecting lot 4, and the east half of lot 5, be executed and carried into effect as against the estate of Trapnall, etc.

Watkins and the administratrix answered the bill, and the cause was regularly heard.

In discussing the several questions presented, those involving

Wassell's right to relief against the estate of Trapnall, will be first considered.

1st. Was there a decree rendered upon the original bill and proceedings, establishing a *lien*, in favor of Wassell, on lot 4, and the east half of lot 5, and the improvements thereon for the payment of $185 32, balance due Wassell for repairs upon the premises? The answer denies the existence of such a decree, and an inspection of the record fully sustains the answer. Indeed, there is little room for so wide a difference as to the construction of the decree; and, upon an examination of the facts in the record, upon which it was rendered, it would seem that no difference of opinion could prevail. Wassell sought to establish a lien on that portion of the property under a contract made with him for repairs, and upon no other ground. By the terms of the contract, the application of the rents, in payment for repairs, was carefully *limited* to $500, and the Court, judging that Trapnall had received nett rents to that amount, decreed that sum against him personally, (as standing in place of the property), leaving a balance still due Wassell as then ascertained, for the payment of which no decree was made against the property, nor could the Court have so decreed, without violence to the plain terms of the contract. Payment of the $500 was made by Trapnall to Wassell, and forms no part of this controversy.

Although Trapnall was in possession, and received the rents arising from the 7 feet 9⅜ inches (parcel of the 13 feet), covered by the warehouse, yet his liability to account to Wassell depends, not upon whether Trapnall had title to the property, but whether Wassell had a right to the rents.

By the contract made with Wassell for repairs, it was agreed, in the language of that instrument, " that five hundred dollars of the rents, issues and profits, arising from the use and occupation of said building, situated at the lower landing, in Little Rock, and known as William J. Byrd's warehouse," etc., should be applied in payment for repairs upon the *warehouse*. The precise locality or situation of the building is not described, but

no one will contend that the seven feet 9⅔ inches were not embraced in the description here given; and it must be remembered that Wassell did not seek to establish or enforce a mechanic's lien, under the statute, upon this portion of the property, as he did upon the storehouse, and that the only lien which he had against the warehouse grew out of this contract, and attached to the 7 feet 9⅔ inches just as it did to every other part of the building, and was, as we have seen, limited to $500, which have been decreed and paid to him.

It follows that the decree, denying relief against the estate of Trapnall, and dismissing the bill as to his administratrix, must be affirmed.

2d. The Court below decreed against Watkins for rents received on the 5 feet 2⅓ inches covered by the storehouse, with interest from the date of the original decree in this cause in the Circuit Court; and for work done upon the building situate on lot 6 and 12 feet on the west side of lot 5, after the purchase of Watkins, and before he notified Wassell that he would not be responsible for repairs, with interest from the first day of the term of this Court, at which the liability of Watkins was ascertained and declared. Both appealed from this decree.

The liability of Watkins for repairs having been declared by this Court, is *res adjudicata*, 15 *Ark.* 89, *supra;* and he does not contest his liability to account for rents received on the 5 feet 2⅓ inches, but insists that the entire rents of that portion of the building were expended in necessary repairs. So that the question of law raised upon this branch of the case, is as to the allowance of interest on the several sums decreed against Watkins.

The question of interest, and whether it is or is not recoverable, has been much discussed, both in England and this country. In some respects, the adjudications are in conflict, and no one has ever met with success in the attempt to reconcile them. In Arkansas, however, the rule in regard to many of the points discussed, has been fixed by legislation.

Our statute provides (*sec.* 1, *chap.* 92, *Dig.*) that " creditors

shall be allowed to receive interest at the rate of six per centum per annum, when no other rate of interest is agreed upon, for all moneys, after they become due by an instrument of the debtor in writing, on money lent, on money due on settlement of accounts, from the day of liquidating or ascertaining the balance due thereon, on money received for the use of another, and retained without the owner's knowledge of the receipt thereof, on money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts, and on all other monies due and to become due for the forbearance of payment whereof an express promise to pay interest has been made." Thus the whole subject is regulated, so far as regards contracts for the payment of money, express or implied, for it is a rule, in the construction of statutes, that the expression of one thing is sometimes the exclusion of another, and when the Legislature has enumerated a variety of cases in which creditors shall be allowed to receive interest, it may be safely assumed that it was not intended to permit them to demand it in the cases not enumerated. *Dwarris on Statutes* 713; *King vs. Cunningham,* 5 *East.* 478; 4 *Price* 78.

So that, in this State, interest can only be recovered upon contracts for the payment of money, in the cases specified in the statute, leaving the recovery thereof in those cases, where the liability is *tortious* in its character, to be governed by the general principles of the law applicable to them.

In the case before us, the claim against Watkins stood as an open account, and consisted of two items: the one was the price and value of certain repairs, and the other, the nett balance of money arising from the receipt of the rents of a portion of the premises, after deducting such sums as had been expended in repairs. These items had not been liquidated, and were uncertain in amount. It is not pretended that there was any express promise to pay interest, and the liability of Watkins to pay interest upon them at all, must be derived from that clause of the statute, which allows it on money " withheld by an unreasonable and vexatious delay of payment," etc. It is

impossible to lay down any definite rule by which to determine, in every case, what shall constitute such an unreasonable and vexatious delay as will entitle the creditor to interest. Each case must necessarily depend, to a great extent, upon its own peculiar circumstances; and in this view, we will proceed to examine each of the items in this case, separately, inasmuch as, in some respects, the circumstances attending them are not the same.

After Wassell had made a contract with Byrd and the Bank to repair the buildings, and had partly executed it, Watkins purchased the property.

For a period of time, after the purchase, Wassell continued to carry on the work, and, upon ceasing, demanded payment from Watkins for the repairs, as well those before, as those made after the purchase, upon the ground that he had a mechanic's lien therefor, which he contended was paramount to the title of Watkins.

To enforce this lien, the original bill was filed. After several years litigation, it was decided by this Court, that Watkins' title was paramount to Wassell's lien; but the Court held that Watkins was liable for such repairs as were made after his purchase and before he notified Wassell that he would not be responsible. This, it would seem, was a result not looked for by either of the parties litigant, as no proof had been taken as to the value of the particular repairs for which Watkins was declared liable. The cause was remanded, and, on reference to the Master, proof was taken, and an account stated. The report of the Master was filed in Court on the 6th February, 1856, showing the value of the repairs to be $925 21, which, as to that item, the Chancellor found correct.

A mere statement of these facts is sufficient to show that the proposition contended for by the counsel of Wassell, that interest should be allowed on the value of the repairs from the time the work was completed, cannot be maintained. The demand was not only not liquidated, but Wassell required the payment of much more than was really due, or which he after-

wards recovered; while Watkins had reason to doubt whether he or his property was bound to him for any thing.   Nor should interest have been allowed, as decreed by the Chancellor, from the time the personal liability of Watkins was declared by this Court.   The parties were already in litigation, the one endeavoring to enforce a doubtful demand, and the other defending himself against it.   No sum was fixed by the decree, nor could be, from the evidence then before the Court.   There was, therefore, a necessity for further proceedings, in order to ascertain what was to be paid; and, until the amount was known and fixed, there could be no default.   Upon the coming in of the Master's report, however, the sum to be paid was liquidated, and the report having been confirmed, as to that item, by the Chancellor—and we think he was warranted in doing so upon the evidence adduced—Watkins should be charged with interest upon the value of the repairs, as reported, from the date of the report.

It may be remarked, as to the item of rents received, that there is no testimony in the record showing receipts exceeding the amounts paid out for indispensable repairs since the date of the original decree in this cause in the Circuit Court.   At that time, a nett balance was ascertained to have been received upon the whole building, and by calculation, upon the rule adopted by the Chancellor, the nett amount then received on the 5 feet 2$\frac{1}{3}$ inches was $103 27; and this sum, with interest from the date of the filing of the supplemental bill (and not from the date of the original decree, as held by the Chancellor), must be decreed against Watkins.   Because, Watkins was ignorant that the storehouse extended over the 5 feet 2$\frac{1}{3}$ inches of ground, and had no information on the subject until the supplemental bill disclosed the fact; and, although this item may be treated as money had and received, yet, in regard to the question of interest, it does not come within the meaning of that clause of the statute, which allows interest "on money received for the use of another, and retained without the owner's knowledge of the receipt thereof."   This clause

applies to cases where the party receiving the money knows it does not belong to him, and, knowing the owner, retains it from him.

In this case, the money was received under mistake, Watkins believing it to be his own. The filing of the supplemental bill, however, explained the mistake, and the means of ascertaining what amount of money had been received, and what was due Wassell being peculiarly within the knowledge of Watkins, he should have then made payment, or offered to do so. Until that period, there was no such delay of "payment, or settlement," as is contemplated by the statute.

So much of the decree of the Court below as allows interest on the value of the repairs from the first day of the term of this Court at which the liability of Watkins was declared, and on the amount of rents received from the date of the original decree in this cause in the Circuit Court, must be reversed, and a decree be entered in this Court, as indicated in this opinion, and certified to the Court below.