## EXCHANGE NAT. BANK v. OKEYA OIL & GAS CO. (F. B. MAYS, Interpleader).

No. 14820—Opinion Filed Sept. 16, 1924.

Rehearing Denied Oct. 21, 1924.

(Syllabus.)

### Mechanics' Liens — Invalidity — Improper Claims in Statement.

Where a contractor does work on two separate structures and under two separate contracts with the owner, he cannot tack on to his claim for money due him under one contract the debt due him under the other contract and thereby extend the time allowed him by sections 7462-4, Comp. Stats. 1921, in which to file a statement and obtain a lien under said statutes. If he combines both claims in one statement and therein asserts a claim in one lump sum for moneys due under the two contracts together, without specifying the particular amount due under each contract separately, his claim for lien is void as against purchasers, creditors, and other lien claimants.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by the Exchange National Bank of Tulsa against the Okeya Oil & Gas Company; F. B. Mays intervening. Judgment for intervener, and plaintiff brings error. Reversed and remanded, with instructions.

Jno. Y. Murry, Chas. E. Bush, and R. E. Thompson, for plaintiff in error.

McCollum & McCollum, for defendant in error.

LYDICK, J. This case involves the invalidity of a lien claimed under section 7464, Comp. Stats. 1921, and filed upon a leasehold for oil and gas, and is based upon services rendered in drilling wells thereon. The lease was owned by the Okeya Oil & Gas Company, a corporation. F. B. Mays is the lien claimant.

The Exchange National Bank of Tulsa brought this action in the district court of Tulsa county against the Okeya Oil & Gas Company and on January 8, 1921, recovered a judgment against that company for $34,449.64 and a further judgment foreclosing

a mortgage lien upon said leasehold and ordering the same sold in satisfaction thereof. The lease was sold at sheriff's sale, and prior to the confirmation of such sale F. B. Mays filed his petition in intervention, asserting that for drilling four wells upon said leasehold there was due him by said lessee an unpaid balance in the principal sum of $5,500, and that by virtue of section 7464, Comp. Stats. 1921, with which he had complied, he had a lien upon said leasehold superior to the lien of the bank, and asked judgment accordingly. Upon trial of the issues, the court found in favor of the intervener and rendered judgment accordingly. The bank has appealed to this court.

The facts which we deem material to the issues here involved are as follows:

The Okeya Oil & Gas Company was the owner of a certain "leasehold for oil and gas." On some date in the year 1920, but prior to June 2, 1920, the Kelly-Mays Drilling Company, a partnership, as first party, entered into a written contract with the said Okeya Oil & Gas Company, a corporation, as second party, by the terms of which first party agreed to drill and complete a well upon said leasehold at a point thereon selected by second party. The contract, very complete and in minute detail, describes the duties of each party in relation to the work to be done and the compensation to be paid. Prior to June 2, 1920, the first party completed all the work required of it. Thereupon these same parties did on the date last named enter into another or second separate written contract which, except as to dates, is an exact duplicate of the former written contract, but which calls for the drilling of another or second well at a different point selected by second party and upon the same leasehold. Within a short time thereafter the first party entirely completed the performance of all duties required of it under the second contract. Thereupon the same parties entered into another or third contract which was an oral one, by the terms of which the first party was to drill another or third well at a different point selected by the second party and upon said leasehold, and according to the terms expressed in the written contracts referred to above. The first party began the drilling of this third well, and after having only partially completed the same, the work was abandoned by mutual consent of the parties. Thereafter these same parties entered into another or fourth contract, which, like the third contract, was an oral one, by the terms of which the first party was to drill another or fourth well at a different point selected by the second party and upon said leasehold,

according to the terms expressed in the written contracts referred to above. At a date here in dispute, about the first of the year 1921, the first party completely performed all the duties required of it by this fourth contract, to wit, the second oral contract.

When the parties were first negotiating concerning the employment of first party by second party to drill wells upon this leasehold, the second party told him, to use the language of the lien claimant here, that "there would be a year's work or maybe more for me when we went up there." This was before the first written contract was executed. Other than this, there was at no time any understanding that first party should drill any well other than the one on which the first party at any time was then working.

About the time the fourth well was completed, the Okeya Oil & Gas Company executed and delivered its certain several promissory notes to the Kelly-Mays Drilling Company in payment of the approximate total amount then due unto it on account of the drilling of all four of these wells. These notes were immediately indorsed and delivered unto F. B. Mays, a member of the partnership of Kelly-Mays Drilling Company, and thereafter remained his sole personal property. The notes included the total amount of compensation called for by all four of these separate contracts for the drilling of all four of these wells, as but very trivial payments had theretofore been made on these accounts.

About the time of the completion of this fourth well the Exchange National Bank of Tulsa loaned unto the Okeya Oil & Gas Company the moneys for which it obtained judgment in the case, and to secure the payment of the same it took that company's mortgage and assignment of the said oil and gas leasehold, which it immediately and duly filed of record.

Some months thereafter, to wit, on July 8, 1921, and which F. B. Mays, lien claimant, here asserts was within four months from the date when labor was last performed under the contract to drill the last or fourth well as above detailed, the said F. B. Mays filed with the court clerk his lien statement, purporting to be in accordance with section 7462, Comp. Stats. 1921, and therein claimed a lien upon the said entire leasehold for the total amount evidenced by the aforesaid notes, and which he then alleged to be due him for the work done upon all four of said wells. In this lien statement the claimant treats his business transactions with the lessee as a single transaction, having been done under one

single contract. The amount due for services on the several wells is not separated. Neither from the lien statement nor from the evidence in the record can we know these separate amounts.

The court made no separate findings of facts and conclusions of law as authorized by section 556, Comp. Stats. 1921, and the parties did not so request. In its journal entry of judgment, however, the court inferentially treats the agreements under which these wells were drilled as a single contract.

The Exchange National Bank of Tulsa, plaintiff in error, here asserts that the judgment of the court is not sustained by the evidence. It asserts that these four wells were drilled repectively under four separate contracts, and that therefore the lien statement, which merely sets out the amount in a lump sum due under all four of these separate contracts without an apportionment thereof and which asserts a single lien upon the entire leasehold, is null and void. It says that to obtain protection under section 7464, Comp. Stats. 1921, the lien claimant should have filed a separate lien statement and claim under each separate contract, and that each of said lien statements should have been filed within four months from the date when labor was last done under the contract material to each respective lien statement. It asserts that the inclusion of all four claims in one "hotch-potch" vitiates the entire lien claimed.

We must hold that the evidence clearly establishes that the work of drilling all four of these wells was done under four separate contracts, neither of which was dependent upon the other. No such contract or the moneys due thereunder can be tacked on to another contract so that the contractor doing the work can procure a lien for the work done under two such separate contracts by filing one claim within the time required as to one of the contracts by the section of the statutes applicable here if the time has expired as to the other contract. This rule is clearly announced in the following cases, and we have found none holding to the contrary: Valley Lbr. & Mfg. Co. v. Drissel et al. (Idaho) 93 Pac. 765, and many cases cited in the opinion; Central Loan & Trust Co. v. Sullivan et al. (Neb.) 63 N. W. 5; North & South Lbr. Co. v. Hegwer (Kan.) 42 Pac. 388; King et al. v. Cleveland Ship Bldg. Co. (Ohio) 34 N. E. 436; Beach v. Stamper et al. (Ore.) 74 Pac. 208.

Instructive, and somewhat analogous, cases in principal, and going further than is required to support the rule we have announced, are as follows: Cahoon et al. v. Fortune Min. & Mill Co. (Utah) 72 Pac. 437; Fay v. Muhlker, 20 N. Y. S. 671; Badger Lbr. Co. v. Parker (Kan.) 116 Pac. 242; Jones v. Balsley & Rogers et al., 27 Okla. 220, 111 Pac. 942.

Denying the rule asserted by the plaintiff in error, the lien claimant, defendant in error here, cites the following authorities: S. H. Bouman Lbr. Co. v. Newton (Iowa) 33 N. W. 377; Williams v. Judd-Wells, 91 Iowa, 378, 51 Am. St. Rep. 350; Lux v. Peterson (Minn.) 44 N. W. 4; Bohn Sash & Door Co. v. Case, 42 Neb. 281, 60 N. W. 581; Parker v. Walker, 48 Okla. 705, 150 Pac. 690; Pinnock v. Hoover (Pa.) 5 Rawle (Pa.) 291; Doolittle v. Plenz, 16 Neb. 153, 20 N. W. 116.

It is merely held in these cases that a single lien may be claimed for work on two or more different buildings or structures when done under a single contract. In each of these cases it is recited that, although the work was done upon different buildings or structures, it was performed under one single contract, and these very cases clearly indicate that their holdings are based upon that fact. By clear inference they indicate that where work is done under separate contracts, that which is due under one contract cannot be tacked on to that due under another contract.

The rights of this lien claimant are dependent wholly upon the statute, and compliance with a reasonable interpretation is absolutely essential to the validity of the lien claimed. Should we follow a rule permitting this "tacking on" process, then a contractor drilling wells on a leasehold, or building houses on lands owned by a single owner, or furnishing material in the construction of various different structures, could so delay the filing of his lien claims as to often do untold injustice to bona fide purchasers, other creditors, and those generally engaged in commercial transactions in relation to the same subject-matter. It would open the door to fraud and collusion, and often destroy the very object and purpose which the statute is enacted to serve. Good faith is the backbone of commerce, and we must adopt a rule consistent with this principle.

Therefore, upon what seems to be the decided weight of authority, and consistent with reason in the premises, we hold that when a lien claimant files his lien statement under the provisions of sections 7462-4, Comp. Stats. 1921, and therein asserts a claim of a lien to secure the payment of one single lump sum for services rendered

under two or more completely separate contracts, and done upon separate structures, although upon a single leasehold, and therein fails to separately state the amount due under each separate contract, and the lien statement is filed at a date more than four months after the time when services were rendered under the contract first completed, the statement is null and void and claimant acquires no lien upon said premises to secure the payment of any part of his claim.

Without reviewing the evidence, because the rule announced requires us to determine the issue in favor of the bank, we submit that we have carefully read the record and are of the opinion that the claimant did not file his lien statement within four months from the date when he in good faith rendered material, and not mere trifling, services under his last contract, and which services he was bound by his contract to perform.

This is a suit in equity, and we are required to weigh the evidence and to reverse the judgment of the lower court when it is clearly against the weight of the evidence. The primary facts as to the contracts are admitted, and a further trial could serve no useful purpose.

The judgment of the lower court is reversed, and the petition and cause of F. B. Mays, intervener, is denied and dismissed. The case is remanded, with intructions to the lower court to render its judgment accordingly.

NICHOLSON, JOHNSON, BRANSON, WARREN, and MASON, JJ., concur.