BLOSE, RESPONDENT, v. HAVRE OIL & GAS CO., APPELLANT.

(No. 7,234.)

(Submitted March 8, 1934. Decided April 2, 1934.)

[31 Pac. (2d) 738.]

452

*Mr. H. S. Kline,* for Appellant, submitted an original and a reply brief; *Mr. C. F. Morris,* of Counsel, argued the cause orally.

454

*Mr. L. E. Rhodes, Mr. O. C. Hauge, Mr. Russell E. Smith* and *Mr. S. C. Ford,* for Respondent, submitted a brief; *Mr. Ford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In 1929 J. J. Hardie, B. D. Burns, D. S. MacKenzie and V. C. Miller were the holders of an oil and gas lease on certain lands in Liberty county, taken in the name of Hardie and Burns, trustees, and on which drilling operations were being conducted by the trustees. On September 23, 1929, the plaintiff, T. H. Blose, was employed by Burns, confirmed by Hardie, to take charge of the well at a wage of $200 per month. In January, 1930, Burns informed Blose that the operators were short of funds and were going to Chicago to seek financing, and that he would have to agree to a temporary reduction of wages to $100 per month. In April the leaseholders incorporated under the name of Havre Oil & Gas Company, each taking stock in the corporation to the extent of his interest in the lease, and, on April 28, 1930, the trustees assigned the lease to the corporation. Burns, who was made manager, then informed Blose that "the company has organized to sell stock and as far as you are concerned you continue just as you have been." Blose had charge of the operations, without interruption, continuously from September 23, 1929, to October 4, 1930,

under the direction of Burns, during which time he drilled, cleaned out the well, swabbed and pumped oil, and kept the well "in a state of repair and operation."

On October 6, 1930, Blose filed a "claim for labor lien," to which he attached his "statement of account for labor furnished in connection with the drilling of oil and gas well" made "to J. J. Hardie, Bears Den Oil Company, B. D. Burns and Havre Oil and Gas Company." The statement is of debits and credits over the entire period of service, and shows a balance due of $1,765.28. On March 22, 1931, Blose brought action against the original associates, the trustees, and the corporation, jointly, for the full amount claimed and for the foreclosure of his asserted lien.

By a joint answer the defendants admit practically all of the allegations of the complaint, but assert that the employment of the plaintiff was by Hardie and Burns up to the time of incorporation, and by the corporation thereafter. They deny the correctness of the statement of account for each period, and allege the invalidity of the "claim of lien." Certain alleged counterclaims are set up which are not material here. Issue being joined, the cause was tried to the court without a jury.

On the trial the defendants demanded that the plaintiff be compelled to elect as to whether he would proceed against the individuals or the corporation, which demand was refused; they objected to the introduction in evidence of the claim of lien filed, which objection was overruled.

At the close of the trial the court made findings of fact and conclusions of law, upon which it entered judgment in favor of the plaintiff, and against Hardie and Burns, trustees, in the sum of $761.08 under the contract, for $150 attorneys' fees and for costs, and against the Havre Oil & Gas Company in the sum of $678.65. The court decreed that the plaintiff has a valid and existing lien against all the right, title and interest of all of the defendants in and to the leasehold for the total of the judgments, and decreed the foreclosure of the lien and sale of the property.

The defendants have appealed from the judgment; they specify error upon the receiving of the lien in evidence, the overruling of the motion to compel an election, in overruling their motion for judgment of dismissal at the close of plaintiff's case, and upon numerous findings of fact made.

The position taken by counsel is that the plaintiff worked under two separate contracts—the first with the trustees, on which he was entitled to maintain an action against them; the second with the corporation, on which he was likewise entitled to maintain an action against it—which could not be united in a single action, and that, as there was no continuous service under a single contract, the single claim of lien for the full amount was invalid and cannot become the basis of a foreclosure suit.

The defendants cite a number of decisions condemning the tacking of one contract debt to that of an independent contract debt as the basis of a single lien claim, the latest of which is an oil-well case (*Exchange National Bank of Tulsa* v. *Okeya Oil & Gas Co.*, 107 Okl. 62, 229 Pac. 765, 766), wherein the correct rule on this subject is stated. Therein the defendant, owner of a leasehold, on four separate occasions entered into separate contracts with one Mays to drill four wells on the leasehold. The wells were completed at different times. Within the statutory period after the completion of the last well, but beyond the period as to the other wells, Mays filed a claim for the total amount due on all of the wells and claimed a single lien upon the entire leasehold. The court declared that neither of the contracts was dependent upon the other, and that "no such contract, or the moneys due thereunder, can be tacked onto another contract, so that the contractor doing the work can procure a lien for the work done under two such separate contracts, by filing one claim within the time required as to one of the contracts, * * * if the time has expired as to the other contract." With this rule we are in accord, but it has no application here.

Defendants cite one case which supports their contention (*Gerard B. Allen & Co.* v. *Frumet Milling & Smelting Co.*, 73

Mo. 688), by holding that, where a contracting firm incorporated, took over the property, and assumed the debts of the firm, in the midst of the performance of the contract, and continued the operations without interruption, there were two independent contractors, because ''in the eye of the law, the firm and the corporation are different persons,'' and therefore a single statement and claim of lien was invalid. This decision was rendered in 1881. We doubt that the supreme court of Missouri would so hold to-day; though the exact point has not since been raised in that court, it has held that the amount due under separate contracts on the same structure may be united in a single lien claim, if filed within the statutory period after completion of each contract. (*Schroeter Bros. Hardware Co.* v. *Croatian ''Sokol'' Gymnastic Assn.*, (Mo. Sup.) 58 S. W. (2d) 995, citing *Grace* v. *Nesbitt*, 109 Mo. 9, 18 S. W. 1118.) At any rate, we cannot subscribe to the extremely technical construction given the lien law to defeat such a lien, a law which ''should not be hypercritically interpreted'' (*Hubbell* v. *Schreyer*, 56 N. Y. 604, 15 Abb. Pr. (n. s.) 300; *Williamson* v. *Shank*, 41 Ind. App. 513, 83 N. E. 641), and which will later be shown to be contrary to the rule elsewhere.

While mechanics' lien laws did not exist at common law and are unknown in England, our forefathers were so imbued with the spirit of justice and fair dealing that such laws came into being in this country almost simultaneously with our Constitution. The first ''Act to encourage master builders by establishing a lien for their just claims'' was passed in Maryland in 1791; the idea spread rapidly to all the original states and to territories and states as they were created. The lien exists to-day in every state in the Union. (Lloyd on Building & Buildings, 413.) Such a law has existed in Montana since the earliest territorial days. (Bannack Laws, p. 332.) For a history of our law, see *Merrigan* v. *English*, 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837, and *Lane* v. *Lane Potter Lumber Co.*, 40 Mont. 541, 107 Pac. 898.) These laws are based upon the biblical injunction that ''the laborer is worthy of his hire.''

(Luke x:7.) Their object is to make the pay of those whose labor or material has gone to enhance the value of another's property prompt and secure against both the misfortune and the possible dishonesty of employers, and the construction to be given to them is that which, without violating the true signification of the language used, shall best promote the object and efficiency of the statute in all its parts. (Phillips on Mechanics' Liens, 3d ed., 28.) "Their equity and beneficence are conceded" by all. (*Shaw* v. *Young*, 87 Me. 271, 32 Atl. 897, 898.)

The controlling statute in the instant case is Chapter 152 of the Session Laws of 1923, which provides in part: "Any person * * * who shall under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes * * * perform labor * * * in * * * drilling, torpedoing, completing, operating, or repairing of any oil or gas well, * * * shall have a lien upon all of the right, title and interest of such owner in and to the whole of such leasehold. * * * The liens herein created shall be enforced in the same manner * * * as now provided * * * for * * * mechanic's liens, except that the time within which such liens must be filed shall be six months instead of ninety days. * * * "

Desiring to avail himself of the benefits of the foregoing statute, the plaintiff was required to file with the county clerk, within six months after the labor was performed, a "just and true account of the amount due him, after allowing all credits, and containing a correct description of the property to be charged with such lien, verified by affidavit, but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description." On an open account, the claim must be filed within six months after the date of the last item. (Sec. 8340, Rev. Codes 1921.)

While under the foregoing statute, and kindred statutes, the ▮ labor must be performed under a contract, express or implied, the contract may be with the owner, his agent or trus-

tee. (*Love Bros.* v. *Mardis,* 189 Iowa, 350, 176 N. W. 616; *Lane* v. *Lane Potter Lumber Co.,* above.) The lien so secured is said to be "the ligament which binds certain property to a certain debt or claim for its payment or satisfaction." (*United States Blowpipe Co.* v. *Spencer,* 40 W. Va. 698, 21 S. E. 769, 771.) The proceeding to foreclose such a lien is in the nature of an action *in rem:* a suit against the property liened upon, rather than against the defendant personally (Lloyd on Building & Buildings, 458), brought on the equitable side of the court (*Simonton* v. *Kelly,* 1 Mont. 483; *Soliri* v. *Fasso,* 56 Mont. 400, 185 Pac. 322), controlled by the general spirit of equity (*Schultz* v. *Teichman Engineering & Construction Co.,* 79 Misc. 357, 140 N. Y. Supp. 429), and is like unto a suit to foreclose a mortgage (*Valett* v. *Baker,* 129 App. Div. 514, 114 N. Y. Supp. 214). In order to warrant a decree foreclosing the lien, the plaintiff must prove the existence of a debt against the party or parties with whom he contracted, and is entitled to a judgment for the amount of the debt in the foreclosure suit. (*Wertz* v. *Lamb,* 43 Mont. 477, 117 Pac. 89.)

Conceding for the moment that two contracts are here involved, the plaintiff had a lien against the property on each, and, as the statute had not run against the lien under the associates' contract, at the time he filed his claim of lien, the single property was chargeable under each contract. (*McCormack* v. *Bertschinger,* 115 Or. 250, 237 Pac. 363.)

Under Chapter 152, above, as under the ordinary mechanic's lien laws, when the mechanic perfects his lien by compliance with the statute, his lien, theretofore in existence by virtue of the statute, takes effect as of the date of the commencement of his work on the property charged. (*Continental Supply Co.* v. *White,* 92 Mont. 254, 12 Pac. (2d) 569.) The manifest object of the law in so providing is "to prevent wrong to the mechanic by alienations or incumbrances during the progress of the work." (*Mellor* v. *Valentine,* 3 Colo. 255.) The contract for the erection of a structure, whether a house or an oil-well, is in effect the granting of power to charge the

land for the purpose of the contract, and the commencement of the work is notice to all the world of the existence of that power. (Phillips on Mechanics' Liens, 404.)

It has been held that there can be no "innocent purchaser" of property upon which an erection has been commenced, as against mechanics' liens which are asserted within the time and in the manner provided by law. (*Bell* v. *Koontz,* 172 Ark. 870, 290 S. W. 597; *Owen* v. *Continental Supply Co.,* 175 Ark. 741, 300 S. W. 398, 400.) Where a transfer is made after the lienable materials or labor were furnished, on perfecting the lien, an action against the original owner for the amount due may be blended with a suit to foreclose the lien against the property, by making the purchaser a party to the proceeding. (*Eddy* v. *Lloyd,* 90 Ark. 340, 119 S. W. 264.) And where a transfer is made before the completion of a contract which gives rise to such a lien, and the purchaser permits the contractor to continue the work, the purchaser will be liable for the amount due under the original contract from the date of sale to completion, or until he notifies the contractor to cease work. (*Watkins* v. *Wassell,* 15 Ark. 73; Id., 20 Ark. 410.)

In *Mellor* v. *Valentine,* above, it is said that "subsequent alienations or incumbrances are not prevented, but made subordinate to the right of the mechanics who, at the time, were engaged in working, and continued afterward to work under previous employment by the vendor," and "where the work done, or materials furnished, is continuous in its character, the contract is to be regarded as an entirety, and the lien attaches for work done and materials furnished, after, as well as before the purchase," citing Phillips on Mechanics' Liens, sections 228, 229, 230; *Monroe* v. *West,* 12 Iowa, 119, 79 Am. Dec. 524; *Jones* v. *Swan,* 21 Iowa, 181; *Milner* v. *Norris,* 13 Minn. 455 (Gil. 424) ; *Miller* v. *Barroll,* 14 Md. 173. To the same effect, see the following cases: *Gale* v. *Blaikie,* 126 Mass. 274; *Jeffersonville Water Supply Co.* v. *Riter,* 138 Ind. 170, 37 N. E. 652; *Trustees Caldwell Inst.* v. *Young,* 2 Duv. (Ky.) 582; *Watkins* v. *Wassell,* above; *Rollin* v. *Cross,* 45 N. Y. 766; *Heath* v. *Tyler,* 44 Md. 312; *Hewett* v. *Currier,* 63 Wis. 386, 23

N. W. 884; *Hutchins* v. *Bautch,* 123 Wis. 394, 101 N. W. 671, 107 Am. St. Rep. 1014; Rockel on Mechanics' Liens, 64.

From the foregoing rules we conclude that, when a mechanic is employed to erect an improvement upon the lands of another, by a contract which, in the contemplation of the parties, is to be continuous until the erection is completed, and commences work on the improvement, a lien for his services immediately attaches to the property, which cannot be defeated by the then owner selling the property, and, if the purchaser with knowledge of the facts permits the mechanic to continue the work under the contract, or, as here, requests him to do so, the contract is to be deemed an entirety, and the single lien may be perfected for the amount due both before and after the transfer of the property.

The plaintiff did not seek to hold the Havre Oil & Gas Company for that part of the debt incurred prior to the assignment of the lease to it, and, in order to foreclose his lien against the property, it was necessary to make the original associates parties to the "blended" action.

There was no misjoinder of causes of action or parties defendant (*Rasmusson* v. *Liming,* 50 Wash. 184, 96 Pac. 1044), and, since when a court of equity takes jurisdiction, if it grants the equitable relief sought, it will retain jurisdiction to render judgment in relation to all matters involved and growing out of the controversy (*Stevens* v. *Equity Mut. Fire Ins. Co.,* 66 Mont. 461, 213 Pac. 1110), having found that the property involved was subject to a lien for the full amount found to be due to plaintiff, but that the present owner was liable only for a portion thereof, the court was justified in rendering judgment against each debtor before it, in order that a decree of sale might be entered (*Owen* v. *Continental Supply Co.,* above).

Defendants assert that the court erred in admitting the lien claim in evidence because it "did not give the name of the owner or reputed owner of the leasehold" and was therefore invalid.

The general rule is that "whenever the particular statute ▮ requires the claim to contain the name of the owner or reputed owner, the omission of this detail is fatal to the lien." (Phillips on Mechanics' Liens, 345, quoted in *Missoula Mercantile Co.* v. *O'Donnell,* 24 Mont. 65, 60 Pac. 594, 991.) In the *O'Donnell Case* this court pointed out that our general lien statute does not require the claim to contain the name of the owner, but that the next succeeding section (sec. 8341, Rev. Codes 1921) requires the county clerk to "abstract" each lien in a proper register, and therein to show "the name of the person against whose property the lien is filed," and therefore held that "a recorded lien claim for materials furnished in the construction of a building, failing to state that the person to whom such materials were furnished was the owner or interested therein, was invalid."

Section 8341, above, applies as well to a claim filed under Chapter 152, Laws of 1923. The O'Donnell rule has been twice approved by this court. (*Cook* v. *Gallatin Ry. Co.,* 28 Mont. 340, 72 Pac. 678; *Interstate Lumber Co.* v. *Magill-Nevin Co.,* 57 Mont. 334, 188 Pac. 144.) The statement made in the O'Donnell opinion is, however, not accurate; the name which must appear in the claim in order to enable the county clerk to perform his duty is not necessarily that of "the person to whom such materials were furnished," but that of "the person against whose property the lien is filed." The lien affects the title of the owner at the time of filing, regardless of who owned the property at the time the contract was made or the lien attached; it is therefore the name of the owner at the time of filing which must appear. (*Davis* v. *Big Horn Lumber Co.,* 14 Wyo. 517, 85 Pac. 980; *Robinson-Slagle Lumber Co.* v. *Rudy,* 156 La. 174, 100 So. 296; *Sprague Inv. Co.* v. *Mouat Lumber & Investment Co.,* 14 Colo. App. 107, 60 Pac. 179, 183; *Willamette Lumber Co.* v. *McLeod,* 27 Or. 272, 40 Pac. 93; *Collins* v. *Snoke,* 9 Wash. 566, 38 Pac. 161; *Corbett* v. *Chambers,* 109 Cal. 178, 41 Pac. 873; *Lang* v. *Adams,* 71 Kan. 309, 80 Pac. 593.)

Under Chapter 152, Laws 1923, it is not the owner of the land, but rather the owner of the leasehold at the time of filing the claim, whose name must appear therein. (*Sunburst Oil & Ref. Co.* v. *Callender*, 84 Mont. 178, 274 Pac. 834; *Callender* v. *Crossfield Oil Syndicate*, 84 Mont. 263, 275 Pac. 273.) The reason for this requirement is to insure the indexing of the lien in such manner as to advise the owner, subsequent proposing purchasers or encumbrancers, and parties examining the title, of the existence of the lien. (*Robinson-Slagle Lumber Co.* v. *Rudy*, above.) A claim of lien which does not contain the name of the person whose property is charged, if permitted to stand, might affect the rights of persons not indexed as parties to the lien, and work injustice to innocent third parties.

Reverting to the three Montana cases in which the rule was applied, we find that, in the first, the lien would be indexed as against the property of O'Donnell, whereas it should have been in the name of Peterson, the grantee of O'Donnell; in the second, against the Yellowstone Park Railway Company, when it should have been against the Gallatin Company; and, in the third, in the name of McGill-Nevin Company, when it should have been against one Umhang. In no one of these cases would a person searching the record have discovered the existence of the lien. This situation does not exist in the case at bar. While the claim is inartistically drawn, it informs the owner of the leasehold, and the world, that Blose claims a lien for labor performed on the oil-well "drilled by J. J. Hardie and Havre Oil and Gas Company" on land accurately described, and at their special instance and request, which lien is upon the well, the machinery and appurtenances, "and upon the lease for oil and gas purposes upon said parcel of land." Here the county clerk would have no difficulty in abstracting and indexing the lien under the name of the owner of the leasehold, for the claim does "contain the name of the owner" and does show "the name of the person against whose property the lien is filed," and in the action to fore-

close the lien the interest of no third person could be affected, as was the case in the three decisions commented upon above. The rule in the *O'Donnell Case* is announced in *Sprague Investment Co.* v. *Mouat Lumber & Inv. Co.*, above, with the addition, "as against these subsequent incumbrancers and grantees."

It was early held in New York that, where the statute does not declare in set terms that the claim shall state who is the owner of the property, the law is satisfied if the claim contains the name of the person against whose interest the lien is claimed and a statement of the facts subjecting that interest to the lien. (*Ross* v. *Simon*, 16 Daly, 159, 9 N. Y. Supp. 536.)

In Nebraska it is held that the Act intended to secure those who have contributed to the erection of a building compensation for their labor, remedial in its character, should be given a "most liberal construction" in order to give full effect to its provisions (*Way* v. *Cameron*, 94 Neb. 708, 144 N. W. 172), and that, in the absence of statutory requirement, as between the parties, the rights of third parties not having intervened, the failure to give the name of the owner does not invalidate the lien (*Hays* v. *Mercier*, 22 Neb. 656, 35 N. W. 894; *Garlichs* v. *Donnelly*, 42 Neb. 57, 60 N. W. 323).

The supreme court of North Dakota has declared a similar rule, and, commenting on a contrary decision, said, "It seems to us that this case illustrates a dangerous tendency on the part of courts to tamper with the plain import of statutory law, by reading into unambiguous statutes a conjectured meaning, which the legislature has excluded therefrom," but said that, had an innocent purchaser or encumbrancer dealt with the owner before the action to foreclose, "it might be that the plaintiff would be estopped from setting up the lien as against such purchaser or encumbrancer. But no such question arises in this case." (*Red River Lumber Co.* v. *Children of Israel* (*Friel*), 7 N. D. 46, 73 N. W. 203, 204.)

As this court has so often said, the pronouncements in a given decision must be read in connection with the facts of the case decided. In each of our cases cited above, the

rule invoked was necessary for the protection of third parties, and, while each case was correctly decided, they do not militate against the validity of the present lien, as between the lienor and the owner of the leasehold, whose name appears in the filed claim which was undoubtedly abstracted and indexed under the name of Havre Oil & Gas Company, as owner. The fact that it may also have been indexed under other names is immaterial. (*Church E. Gates & Co.* v. *Empire City Racing Assn.*, 225 N. Y. 142, 121 N. E. 741.)

The defendants urge that, because the lien claim declares that the claimant performed the work "at the special instance and request of" the parties named "and the persons and corporations for whose immediate use and benefit the said labor was performed," it is indicated that others than those mentioned were interested in the property. The whole sentence means no more than that the persons mentioned were the parties at whose request, and for whose use and benefit, the labor was performed.

The bare overstatement of the amount due the lienor does not, under the statute, invalidate the lien. (*Eskestrand* v. *Wunder,* 94 Mont. 57, 20 Pac. (2d) 622.)

No reversible error appearing in the record, the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied April 13, 1934.