CALLENDER, RESPONDENT, *v.* CROSSFIELD OIL SYNDICATE ET AL., RESPONDENTS, BUFFALO OIL AND GAS CO., APPELLANT. BLACK–SIVALLS & BRYSON, INC., INTERVENER, RESPONDENT.

(No. 6,368.)

(Submitted January 15, 1929. Decided March 5, 1929.)

[275 Pac. 273.]

*Mr. R. L. Clinton* and *Mr. Harrison Brown,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

The Buffalo Oil & Gas Company, hereafter called the defendant, was the owner and holder of an oil and gas lease covering an 80-acre tract of land in Toole county, subject to the land owner's royalty of fifteen per cent and an overriding royalty of twenty per cent. On July 23, 1926, it entered into an agreement with the Crossfield Oil Syndicate, hereafter called the syndicate, under the terms of which defendant agreed to sell and the syndicate agreed to buy the lease for a consideration of $17,000, payable $7,000 at or before the execution of the agreement, and the balance in three payments extending over a period of one year; it was stipulated that the syndicate should have and retain possession thereof and operate the same so long as it performed the terms and conditions of the agreement. At the time of the execution of the agreement there were two producing wells, with casing, tubing, rods and other pumping equipment, upon the premises. The syndicate took possession and thereafter entered into a contract with plaintiff for the drilling of what is referred to as well No. 3, the full contract price for drilling this well and for the materials furnished was paid. Thereafter well No. 4 was drilled by plaintiff at an agreed price of $7,250, plaintiff furnishing all drilling equipment, tools, water, casing and labor. No part of the contract price having been paid, plaintiff, on March 16, 1927, filed notice of lien and statement of account against the syndicate and Rocky Mountain Oil Company, as the owners of the oil and gas lease, the buildings thereon, appurtenances thereto, the material furnished, and all other oil-wells, fixtures and appliances used in operating for oil and gas purposes upon the leasehold. This action was brought to foreclose the

lien. Defendant answered, denying the material allegations of the complaint, but admitting that it has an interest in and to the leasehold, and alleged as a further and separate defense its ownership of the leasehold, the execution of the agreement between it and the syndicate, that the sum of $7,000 of the purchase price was due and unpaid, that it has canceled the agreement and declared the same null and void, and that the syndicate has no right, title, or interest in and to the lease; that it had not hired or authorized plaintiff to drill well No. 4.

Defendants syndicate and Rocky Mountain Oil Company filed joint answer, admitting the employment of plaintiff by the syndicate to drill well No. 4, and that there is now due and owing to plaintiff the sum of $6,784, and that the payment due defendant under the terms of the agreement has not been made. The Rocky Mountain Oil Company alleged that it had no business transactions with plaintiff and was not liable by reason of any sum due plaintiff for drilling the well.

Black-Sivalls & Bryson, Inc., was granted leave to intervene, and filed its answer and cross-complaint, alleging that it had performed labor and furnished certain material for defendants syndicate and Rocky Mountain Oil Company, which were used in the erection of an oil tank upon the leasehold; that it had, on March 16, 1927, filed its notice of lien and claim, and prayed judgment for the foreclosure thereof.

Issue was joined and trial had before the court sitting without a jury; findings of fact and conclusions of law were filed and judgment entered for plaintiff and intervener. Defendant appeals from the judgment.

The first question presented for determination is: Were the liens of plaintiff and intervener sufficient in law to constitute valid liens?

Section 8375, Revised Codes of 1921, as amended by Chapter 152, Laws of 1923, provides, in substance, that any person who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes, perform labor or fur-

nish material, machinery, and oil-well supplies used in the drilling, completing, or operating any oil-well, shall have a lien upon all of the right, title, and interest of such owner in and to the whole of such leasehold or lease for oil purposes, the buildings and appurtenances, and upon the material and supplies so furnished, and upon the right, title, and interest of such owner in and to the oil-well for which they were furnished, and all other oil-wells, fixtures, and appliances used in the operating for oil purposes upon the leasehold.

Every person wishing to avail himself of the benefits of the above section must file with the county clerk of the county in which the property is situated, and within six months after the material has been furnished, or the work performed, a just and true account of the amount due him, after allowing all credits, and containing a correct description of the property to be charged with such lien, verified by affidavit, "but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description." (Sec. 8340, Rev. Codes, 1921.)

The lien of plaintiff sets forth that he furnished labor, ██ material, machinery, and oil-well supplies used in drilling, completing, and operating oil-well No. 4, upon the premises, described by legal subdivisions, under an express contract with Crossfield Oil Syndicate and Rocky Mountain Oil Company. It contains a just and true copy of the account, and, after a description of the land sought to be subjected to the lien, other property attempted to be charged with the liens is described as follows: "And the buildings thereon, and appurtenances thereto, and the material and supplies so furnished, and all other oil-wells, fixtures and appliances used in operating for oil and gas upon the leasehold above described." It sets forth that the companies last named are the owners and reputed owners of the leasehold and property; that the labor was performed and material and supplies were furnished within six months, and that the claim of lien is filed for the purpose of availing himself of the law

and securing a lien upon the property therein described. The lien of Black-Sivalls & Bryson, Inc., is similar in description to that of plaintiff.

It is contended that the liens do not contain a sufficient description of the property sought to be charged. In order to create a lien it is sufficient if there has been a substantial compliance with the statute. (*Wertz* v. *Lamb,* 43 Mont. 477, 117 Pac. 89; *McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428.) The courts are liberal in upholding imperfect descriptions, and there is great reluctance to set aside liens merely because of a loose description of the property, as it is recognized that the claimant may prepare his own papers. (40 C. J. 219; Rockel on Mechanics' Liens, sec. 103.) The general rule by which the adequacy of the description is to be tested is: If there appears enough in the description to enable one familiar with the locality to identify the property upon which the lien is claimed, it is sufficient. (*Western Iron Works* v. *Montana P. & P. Co.,* 30 Mont. 550, 77 Pac. 413; *Ivanhoff* v. *Teale,* 47 Mont. 115, 130 Pac. 972.) The purpose of requiring the lien to be filed is to impart notice to the owner and to subsequent purchasers and lienholders. (*Johnson* v. *Erickson,* 56 Mont. 550, 185 Pac. 1116.) We think the description contained in the liens is sufficient.

It is contended that the notices of liens are defective in describing the syndicate and Rocky Mountain Oil Company as the owners of the leasehold, and in not naming defendant, the record owner. While it is true defendant was the legal owner of the leasehold, the syndicate was the owner of an equitable interest. The word "owner" as used in statutes of the character of section 8375, supra, ordinarily means one who has an estate in the property which may be assigned, transferred, or conveyed. (40 C. J. 93; Rockel on Mechanics' Liens, sec. 11.) We think this is the meaning to be given the word "owner" as used in this section, rather than the restrictive meaning contended for by defendant. Only the equitable interest of the syndicate was subject to the liens,

and they did not affect defendant's legal title. (*Williams* **v.** *Vanderbilt*, 145 Ill. 238, 36 Am. St. Rep. 486, 21 L. R. A. 489, 34 N. E. 476; *Hunt Hardware Co.* v. *Herzoff*, 196 Iowa, 715, 195 N. W. 264; *Getchell & Martin Lumber & Manufacturing Co.* v. *Peterson & Sampson*, 124 Iowa, 599, 100 N. W. 550.) The notices of liens are not open to the objection made.

Defendant complains that the court erred in finding that the syndicate was the owner of the leasehold, subject to the terms of the lease and various assignments thereof. It is undisputed that, prior to the contract of July 23, 1926, defendant was the owner of the leasehold. On that date it entered into the agreement with the syndicate, under the terms of which it agreed to sell, and the syndicate agreed to buy, the lease for a consideration of $17,000, payable $7,000 upon the execution of the agreement, $2,500 within thirty days, $2,500 within sixty days, and the balance within one year. It was stipulated that the syndicate should be let into possession of the premises and retain possession and operate the same so long as it performed the terms and conditions of the agreement; defendant agreed that within fifteen days it would execute and place in escrow an assignment and transfer of the leasehold and "property which it hereby agreed to sell, with directions to said depository to deliver said assignment to the party of the second part [syndicate] or its order, if and when the deferred payments" were made. It was also agreed that if the syndicate should fail to make the payments or meet the interest thereon or any part thereof, or perform any of the terms of the lease or assignments thereof, then the whole of the payments and interest "shall at the election of the party of the first part [defendant] become immediately due and payable, and this contract shall at the option of the first party be forfeited and terminated, and party of the first part shall have the right to re-enter and take possession of the premises aforesaid and all payments made by the party of the second part shall be retained by the party of the first part in full satisfaction and as reasonable rental for the property above described, and

in liquidation of all demands by the first party sustained.''
Time was expressly made the essence of the contract. The
syndicate paid $7,000 upon the execution of the contract and
took possession of the premises and operated same. Of the
balance due, $3,000 was paid on the principal and $174.40
on interest. The syndicate defaulted in making the balance
of the deferred payments.

An agreement to sell is a contract to be performed in the
future, and, if fulfilled, results in a sale; it is a preliminary
to a sale, and is not the sale. A breach may occur by which
the contemplated sale never takes place. (*Ide* v. *Leiser*, 10
Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Wright Land &
Investment Co.* v. *Even*, 57 Mont. 1, 186 Pac. 681.) ''An
agreement to sell and buy is a contract by which one engages
to transfer the title to a certain thing to another, who engages
to accept the same from him and to pay a price therefor.''
(Sec. 7586, Rev. Codes 1921.)

From a careful examination of the agreement it is obvious
that it is a contract to sell, and the syndicate acquired only
an equitable interest in and to the leasehold; its right to pos-
sess and operate the premises for oil and gas purposes con-
tinued only so long as it conformed to the requirements of the
agreement; upon default in the payments it might at the
option of defendant be subjected to the loss of all its rights.
(*Wright Land & Investment Co.* v. *Even*, supra; *Knapp* v.
*Andrus*, 56 Mont. 37, 180 Pac. 908.) We are of opinion that
the court erred in finding that the syndicate was the owner of
the leasehold.

The next question presented is: Did the court err in im-
pressing the liens upon all other oil-wells, fixtures, and ap-
pliances, and the buildings thereon and appurtenances
thereto, used for operating for oil and gas purposes upon the
leasehold, and in decreeing their sale?

It will be noted that, while section 8375, supra, provides
that the lien shall attach to all the right, title, and interest
of the owner in and to the buildings and appurtenances, the

material and supplies furnished, and upon all of the right, title, and interest of such owner in and to all other oil-wells, fixtures, and appliances used in operating for oil and gas purposes, the decree charges the entire property with the liens. This was error. The liens could not affect the interest of defendant. (*Williams* v. *Vanderbilt*, and *Manufacturing Co.* v. *Peterson*, supra.)

Counsel for defendant insist that the oil-wells, buildings, appliances, fixtures, and other machinery were a part of the leasehold. With this contention we agree. In the case of *Sunburst Oil & Refining Co.* v. *Callender, ante*, p. 178, 274 Pac. 834, we held that "when an oil well is drilled under a lease, the well, the hole in the ground, becomes, of necessity, a part of the land and a part of the leasehold, but the hole in the ground without casing amounts to nothing as a well, and therefore the casing inserted in the ground and to be left there as long as the well is in use, becomes a part of the well, and, consequently, of the leasehold. * * * " Casing in wells, engines, buildings and other machinery and appliances placed upon the land by the lessee for operating the premises for oil and gas purposes are trade fixtures. (*Sunburst Oil & Ref. Co.* v. *Callender,* supra; Summers on Oil & Gas, 644.) Section 6669, Revised Codes of 1921, provides: "A thing is deemed to be affixed to land when it is * * * imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." Section 6670, Id., provides: "Sluice-boxes, * * * and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." In the case of *Mid-Northern Oil Co.* v. *Walker*, 65 Mont. 414, 211 Pac. 353, this court held that an oil-well is a mine. We are of opinion that the court erred in charging the oil-wells, fixtures, etc., with the liens.

We are not impressed with plaintiff's contention that by its answer defendant disclaimed any interest in and to this

property. Defendant expressly alleges that it is the owner of the leasehold, and, holding as we do that the fixtures, machinery, and other appliances are a part of the leasehold, this is equivalent to an express allegation of ownership in and to the oil-wells, casing, fixtures, appliances, and other equipment used in operating the premises for oil and gas purposes.

Error is predicated upon the refusal of the court to litigate ██ the rights of the company and syndicate as set forth in the defendant's "further and separate answer" to plaintiff's complaint. Counsel for plaintiff contends that the ruling was correct for the reason that: (1) The pleading was not a cross-complaint; (2) the cause of action alleged did not exist at the time the complaint was filed; and (3) there was not any real controversy between the parties.

Section 9151, Revised Codes of 1921, provides, in substance, that whenever any defendant desires any relief against any party relating to the subject matter upon which the action is brought, or affecting the property to which the action relates, or whenever the judgment in such action may determine the ultimate rights of the defendants to an action between themselves, any defendant may, in addition to and in his answer, file at the same time, or subsequently by permission of the court, a cross-complaint against all parties to such action, and ask relief against any person or corporation necessary or requisite to permit the court to make a full determination of and to adjudicate all rights relating to or dependent upon the contract or subject matter, or affecting the property to which the action relates. Service of a copy of the answer and cross-complaint upon the attorney of record for any party who has appeared shall constitute service upon such party.

Manifestly, the purpose of this statute was to broaden the rule which obtained under the ancient chancery practice by permitting the determination in the one action of the ultimate rights of the parties affecting the subject matter involved in litigation. (*Security State Bank* v. *Melchert,* 67 Mont. 535, 216 Pac. 340.) Here the subject matter was the leasehold;

the right of plaintiff and intervener to have the same charged with liens depended upon the question of whether or not the agreement had terminated; if it had terminated and been canceled, as alleged by defendant, the court could not charge the leasehold interest, the oil-wells, fixtures, appliances, buildings, and other machinery, with the liens. The forfeiture of the contract between defendant and the syndicate would terminate the rights of plaintiff and intervener in and to the leasehold, and the oil-wells, fixtures, etc., except "the material and supplies so furnished" by plaintiff in drilling well No. 4, or the material furnished by intervener. (*Williams* v. *Vanderbilt,* supra; *Rothe* v. *Bellingrath,* 71 Ala. 55; *Colby & Dickinson* v. *Baker,* 145 Wash. 584, 261 Pac. 101; 40 C. J. 339; sec. 8343, Rev. Codes 1921.)

The pleading in question is termed "a further and separate defense." The designation given it by the pleader is not conclusive. Whether it is a cross-complaint must be determined by the court from its allegations, and not from the designation given it by the party. (*Pickwick Stages* v. *Board of Trustees,* 189 Cal. 417, 208 Pac. 961; 21 Cal. Jur. 86.) To constitute a cross-complaint, the relief sought must to some extent defeat, overcome, or affect plaintiff's cause of action, or lessen, modify, or interfere with the relief sought by plaintiff. (*Yorba* v. *Ward,* 109 Cal. 107, 38 Pac. 48.) A cross-complaint should be as distinct and separate from an answer as any other independent pleading; it must state facts sufficient to entitle cross-complainant to affirmative relief, and also all facts essential to show that the demand is a proper subject of cross-complaint. (21 Cal. Jur. 84; *Bullard* v. *Bullard,* 189 Cal. 502, 209 Pac. 361; *Fresno Canal & Irr. Co.* v. *Perrin,* 170 Cal. 411, 149 Pac. 805.)

No useful purpose would be served by setting forth the allegations of the pleading here involved; suffice it to say we think the allegations are sufficient to bring it within the rule announced and that it is, in fact, a cross-complaint.

Plaintiff is not in a position to complain that the syndicate ▆▆ was not served with a copy of the cross-complaint; the failure to serve it would not affect the jurisdiction of the court to determine the issues made by the cross-complaint and plaintiff's reply thereto, so far as defendant and plaintiff are concerned. (*Rodgers* v. *Parker*, 136 Cal. 313, 68 Pac. 975; *Van Loben Sels* v. *Bunnell*, 131 Cal. 489, 63 Pac. 773; 21 Cal. Jur. 87.)

We cannot agree with counsel that where the cause of ▆▆ action set forth in the cross-complaint is one based on contract, it should be limited to a cause of action existing at the commencement of the action. The authorities relied upon in support of the argument are not in point. In the cases cited the court had under consideration a statute which expressly limits counterclaims to causes of action "existing at the commencement of the action." There is no such limitation in section 9151, supra. Had the legislature intended to place such a restriction as to pleading by way of cross-complaint, it would have used the same, or similar, language as that used in the statutes relating to counterclaims. Considering the very purpose of the Act and the language used, we think no such limitation was intended.

The pleadings clearly demonstrate that there was a *real* controversy existing between cross-complainant, on the one side, and plaintiff and intervener, on the other. This was sufficient to bring the case within the provisions of section 9151, supra, even though there was not any controversy between defendant and the syndicate. The court should have determined the issues presented by the cross-complaint and the reply thereto.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.