CONTINENTAL SUPPLY CO., Respondent, *v.* WHITE ET AL., Defendants; NADEAU ET AL., Appellants.

(No. 6,911.)

(Submitted March 17, 1932. Decided June 20, 1932.)

[12 Pac. (2d) 569.]

*Mr. E. K. Cheadle, Jr.,* for Appellant Davis Supply Company, submitted a brief and argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover* and *Mr. S. B. Chase, Jr.,* for Appellant Ralph Chamberlain, submitted a brief; *Mr. Chase* argued the cause orally.

*Mr. R. L. Clinton,* for Appellant G. R. Nadeau, submitted an original and a supplemental brief and argued the cause orally.

*Mr. Louis P. Donovan* and *Mr. Henry McClernan,* for Respondent, submitted a brief; *Mr. Donovan* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Davis Supply Company, a corporation, G. R. Nadeau and Ralph Chamberlain have separately appealed from a judgment in favor of the plaintiff, Continental Supply Company, foreclosing a lien against certain oil-well casing acquired by appellants and obtained by them from H. P. White and J. E. Winther.

In May, 1929, White and Winther commenced drilling operations under a lease held by the former on certain lands in Liberty county; they purchased certain casing and other necessary supplies from the plaintiff on credit. The well was completed in July, at which time the operators were owing to plaintiff a balance on account of nearly $5,000. The well proved to be a nonproducer and, consequently, the casing theretofore installed was pulled in August; it was racked on the leased ground at the site of the well.

In October the operators sold 1,000 feet of 10-inch casing to one Earl McClure, and in November sold 1,641 feet of

8¼-inch casing to defendant Chamberlain. This casing was a part of that pulled from the well, but was not supplied by this plaintiff. Thereafter, on December 18, 1929, the plaintiff filed with the county clerk of Liberty county its affidavit, notice and itemized statement of account constituting its claim of lien on the leasehold and the property of White and Winther located thereon.

In February, 1930, Nadeau caused 1,760 feet of 6⅝-inch casing, which had been sold to the operators by the plaintiff and originally placed in the well, to be sold on execution and became the purchaser thereof. In March, the Davis Supply Company, under authority from McClure, removed the 10-inch casing from the premises.

Thereafter the plaintiff commenced this action against White and Winther and all parties claiming any interest in the property of the debtors on the leased premises at the time its lien attached thereto. White and Winther defaulted and their default was duly entered.

These appealing defendants interposed separate demurrers, which were overruled, and thereafter answered. The Davis Supply Company alleged that it acted merely as agent for the purchaser McClure, for the purpose of settling certain accounts owing by him to it and others; it admitted that it took the 10-inch casing, sold a part thereof, and that the balance was so commingled with like casing in its warehouse as to be unidentifiable. It alleged that this casing was not sold to the debtors by the plaintiff, was not used in the well and was not the property of the debtors at the time plaintiffs filed its lien and was, therefore, not covered by the lien.

Admitting the purchase alleged, Chamberlain's answer is, in effect, a general denial of all other allegations.

Nadeau denied generally all allegations, followed by an affirmative defense of estoppel, based upon alleged statements made to him by the manager of the plaintiff company, on which he relied in instituting an action against White and Winther.

Issue was joined by replies, and the cause was tried to the court sitting without a jury. The trial resulted in findings of

fact and conclusions of law in favor of plaintiff, followed by the judgment from which these appeals are taken.

The complaint alleges that White and Winther "were the owners of a leasehold for oil and gas purposes" on lands described, on which they operated in the drilling and completion of a well during the period from May 9 to July 11, 1929; that during that period, at the special instance and request of White and Winther, plaintiff furnished them "material, machinery and oil well supplies" used in the operations, of a reasonable value of $4,757.31; "that the defendants have not paid the said sum * * * nor any part thereof, and the same is now due, owing and wholly unpaid." It is then alleged that, on December 18, 1929, the plaintiff "for the purpose of securing and perfecting a lien for moneys due to it as aforesaid upon said oil and gas leasehold * * * and the building and appurtenances thereto, and upon the material and supplies so furnished and upon all the right, title and interest of said owners in and to" the well "for which they were furnished, and upon all the right, title and interest of such owners in and to all other * * * fixtures and appliances used in operating for oil and gas * * * upon the leasehold, filed * * * Notice of Claim of Lien * * * containing a just and true account * * * and a correct description of the property charged with the lien." A copy of the claim filed is attached as an exhibit. It is then alleged that, on the date of filing, the property described was on the leasehold and that any rights of these defendants were acquired subsequent thereto.

1. The first attack upon the complaint made by the Davis Supply Company is that it affirmatively appears therefrom that the 10-inch casing was not furnished by the plaintiff. This fact might, under the general materialman's lien statute (sec. 8342, Rev. Codes 1921), be fatal to the complaint, but, as hereafter shown, is immaterial under the special statute on which the complaint is based. (Chap. 152, Laws 1923.)

2. It is next contended that the complaint is insufficient, in that it fails to allege that the plaintiff is the owner

and holder of the obligation alleged to be secured by the lien, and that the plaintiff is the owner and holder of the lien.

On this contention counsel for Chamberlain cites *Bennett Realty Co.* v. *Isbell,* 219 Ala. 318, 122 South. 337, and *J. I. Case Threshing Machine Co.* v. *Simpson,* 54 Mont. 316, 170 Pac. 12. The first case merely declares the general rule that, in an action to foreclose a mechanic's lien, the complaint must contain all of the allegations necessary to support an action at law to establish the obligation. The second holds that, in an action on a negotiable note made payable to bearer, the complaint must allege that the plaintiff is the owner and holder thereof. Neither case supports the contention made.

Here the obligation is on an open account; the complaint follows the approved form in such actions (2 Bancroft on Code Pleading, 1120) and also the form approved for the foreclosure of a mechanic's lien, which form contains no averment that plaintiff is the owner and holder of the lien (3 Bancroft on Code Pleading, 3188). The complaint is sufficient in this respect. (*Wertz* v. *Lamb,* 43 Mont. 477, 117 Pac. 89; *Mills* v. *Olsen,* 43 Mont. 129, 115 Pac. 33; 8 C. J. 885, note 38.)

3. It is contended that the complaint does not sufficiently state a cause of action against Nadeau. He was a proper party defendant (sec. 8347, Rev. Codes 1921), and, while there is some authority to the contrary, such a complaint is sufficient if it merely alleges, as to such parties, that they claim some right, title or interest in the property described, but that such interest is subsequent to and subject to the lien and claim of the plaintiff; matters purely of a defensive nature need not be anticipated and negatived. (*Wertz* v. *Lamb,* above; 40 C. J. 402, sec. 553, and 419, sec. 573.)

4. The complaint originally alleged that the claim of lien was "filed for record"; the court at the trial permitted the words "for record" to be stricken; error is assigned. The statute merely provides that the claim shall be "filed," but on filing it is indexed and abstracted in proper records by the clerk (sec. 8341, Rev. Codes 1921) and thereupon becomes

a record of his office. The words stricken might well have been considered surplusage; certainly the court did not err in permitting the amendment in the absence of any showing of surprise or necessity for continuance.

5. It is contended that the complaint and notice do not sufficiently describe the property on which a lien is claimed, or the owner of the property to be charged with the lien. The statute, in so far as applicable here, provides that "any person * * * who shall under contract * * * with the owner of any leasehold for oil and gas purposes, * * * or with the trustee or agent of such owner * * * furnish * * * oil well supplies [for operating] * * * [or] drilling * * * any * * * well * * * shall have a lien" upon the well, the leasehold, buildings, appurtenances, the materials furnished, and upon all "fixtures, and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished," and that "the liens herein created shall be enforced * * * and the notice of same shall be given * * * in the same manner as now provided by the laws * * * for materialmen's and mechanic's liens." (Chap. 152, Laws 1923, amending sections 8375 and 8377, Rev. Codes 1921.)

Section 8340, Revised Codes 1921, thus made applicable, declares that the lien is "perfected" by the filing of the notice containing "a just and true account of the amount due" and "a correct description of the property to be charged"; no mention is made of description of the owner. It is then provided that "any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description."

The notice here correctly describes the leasehold and names "White and Winther, a copartnership," as owners. It describes the property as the leasehold "and all machinery, materials and supplies whatsoever and any and all buildings, improvements and appurtenances situate upon, belonging to or in any way whatsoever appertaining to the premises." While it does not follow the exact wording of the statute, the

property can be easily identified and the notice is sufficient. (*Wertz* v. *Lamb,* above; *Dean* v. *Stewart,* 49 Mont. 506, 143 Pac. 966; *Callender* v. *Crossfield Oil Syndicate,* 84 Mont. 263, 275 Pac. 273.)

6. The vital questions for determination are as to whether or not the lien created by Chapter 152, Laws of 1923, attached to the property secured by these appealing defendants before the notice of lien was filed, and as to when such a lien attaches to the property on which it is given by the statute.

The casing purchased by Chamberlain and that acquired by the Davis Supply Company was not furnished by the plaintiff; that purchased by Nadeau at his execution sale was so furnished. All of it was placed in the well during the operations, but removed therefrom and racked at the site of the well before it was disposed of as indicated.

Casing placed in an oil-well becomes a "trade fixture" and ██ a part of the leasehold. (*Callender* v. *Crossfield Oil Syndicate,* above.)

Under the ordinary materialmen's or mechanics' lien law, the lien attaches by reason of furnishing labor or material, and is "perfected" by the filing of the required statement, whereupon it is said to "relate back" and have preference over liens and encumbrances attaching subsequent to such furnishing or the commencement of the improvement (*Mason* v. *Germaine,* 1 Mont. 263; *Merrigan* v. *English,* 9 Mont. 113, 5 L. R. A. 837, 22 Pac. 454; *Murray* v. *Swanson,* 18 Mont. 533, 46 Pac. 441; *Louis* v. *Theatorium Co.,* 69 Mont. 50, 22 Pac. 1062); but this interpretation is said to be compelled by the provision found in section 8342, Revised Codes 1921, brought down from the Bannock Statutes, that such a lien shall "have preference" over any mortgage, encumbrance or other lien made subsequent to the commencement of the improvement. Under a similar provision it is held that a conveyance is to be regarded as an "encumbrance." (*Ellett* v. *Tyler,* 41 Ill. 449.)

The class of liens we now have under consideration came into existence by reason of the enactment of Chapter 45,

Laws of 1917 (sec. 8375, Rev. Codes 1921). The lien created by this enactment is no more and no less than the ordinary materialman's and mechanic's lien, adapted by special statute to conditions existing in the oil and gas industry; the desired result might as well have been accomplished by the amendment of sections 8339 and 8342, Revised Codes 1921; consequently, unless the wording of the special statute compels a different interpretation, the construction placed upon those sections, and like provisions of other states, is applicable here.

This special statute was patterned after, and combined the provisions of, sections 8339 and 8342, above, and thus the legislature incorporated in it, as a final clause, the final clause of section 8342, altered to meet different elements included in the new enactment. This final clause declares that the lien therein created shall be preferred to all other liens and encumbrances which may attach to or upon the leasehold, oil-well, pipe-line, etc., "subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies." (Sec. 8375, Rev. Codes 1921.) In 1923 this section was amended (Laws 1923, Chap. 152, sec. 1) for the evident purpose of making the following changes in the law: The original section provided that the lien should attach to "the whole of such leasehold or lease," and to the well "and all other oil and gas wells, fixtures and appliances used in the operating." By this amendment each of the quoted clauses was rendered applicable only to "all of the right, title and interest" of the operator in the property described.

On the enactment of the section as amended, the legislature ignored the closing clause of section 8375, quoted above. As it is on such a clause as this that some authorities base the so-called doctrine of "relation back" to the time of the commencement of the improvement or work, on the filing of the statement of claim, it becomes important to determine the effect of the legislative failure to carry the clause forward into the Act as it now stands.

The rule is that where, as here, the legislature declares that an existing statute is "amended to read as follows," the

new Act takes the place of the old; only so much of the old as is repeated in the new is continued in force, and all portions omitted from the new Act are repealed (*City of Helena* v. *Rogan*, 27 Mont. 135, 69 Pac. 709; *State ex rel. Paige* v. *District Court*, 54 Mont. 332, 169 Pac. 1180; *Continental Oil Co.* v. *Montana Concrete Co.*, 63 Mont. 223, 207 Pac. 116), and "the repeal of the Code provision had the effect of blotting it out as completely as if it had never existed." (*Westchester Fire Ins. Co.* v. *Sullivan*, 45 Mont. 18, 121 Pac. 472, 473.)

Under the above rule, the present Act should be construed as though no mention of "subsequent" liens and encumbrances had ever been made in this connection; but it is sometimes said that when the legislature strikes from an existing statute a rule, it denotes the intention that the contrary rule should prevail. Had the legislature done nothing more by the amendment than to omit the clause to which reference is made, the reasoning which induces such a statement might be persuasive, but, as shown above, an important change was made in the Act without the omission mentioned, and, as will presently appear herein, even a change in the rule based upon the omitted clause would not affect plaintiff's rights.

The fundamental idea underlying the granting of such liens is the protection of those who contribute to the betterment of property by extending credit to the owner. One of the objects of granting this protection is the improvement of the state by encouraging building and development of property and resources. (Phillips on Mechanics' Liens, 20.) Credit is an important element of capital, without which much of the progress of the state would not have been made, and this is particularly so in the infancy of oil lands exploration. It follows that such liens should attach when the creditor parts with his labor or material on credit. However, as such liens were unknown to the common law, or to equity, they are creatures of the statute. (*Davis* v. *Farr*, 13 Pa. 167; *McNiel* v. *Borland*, 23 Cal. 144; *Van Stone* v. *Stillwell*, 142 U. S. 128, 35 L. Ed. 961, 12 Sup. Ct. Rep. 181); it follows that the rights of the lienor are fixed by the statute declaring the lien, and it

cannot be claimed that a lien attaches or operates at any earlier date than that fixed by the statute (*Quimby* v. *Sloan,* 2 Abb. Pr. (N. Y.) 93). This fact gives rise to a diversity of opinion as to when such liens attach and renders decisions from other states valueless as a precedent unless the statutes of such states are substantially the same as our own.

Some statutes, in terms, date the lien from the date of furnishing the labor or material; some from the date of contract to deliver; some from the furnishing of the first item of the bill; some from the commencement of the work on the improvement, regardless of when the material or labor is furnished; while in a few states, either because of a direct pronouncement or compelled construction of the statute, the lien is created by, or the time of its attachment fixed as of the date of, the filing of the required notice or statement. "To determine which of these periods is the most consonant with sound policy, much depends upon the favor with which it is the interest of the state to regard the claims of mechanics" or materialmen. "If the intention is to offer them real protection, * * * the period from which the lien should date" is the commencement of the work, for "if the lien is to date only from the filing of the notice," those dealing with the designing may in every instance be deprived of the security by intervening mortgages and judgments. It is no answer to say that the mechanic (or materialman) may give the notice as soon as he "commences work (or furnishes material). There is nearly always at the inception of the enterprise a confidence * * * that the owner * * * will pay * * * and a party not only hesitates * * * to pay a lien * * * but it would be ruinous to his business in ordinary transactions, by deterring honest men from contracting with one whom they know in advance would unnecessarily encumber their property with a lien." (Phillips on Mechanics' Liens, 381.)

"When a lien attaches, the provisions of law upon the subject being remedial, a liberal construction will be put upon the statute for the purpose of accomplishing its objects." (*Trask* v. *Searle,* 121 Mass. 229.)

In harmony with the fundamental basis of such liens, in the absence of statutory provisions to the contrary, the statutes are construed as granting the lien as of the date the creditor parts with his commodity on credit. (40 C. J. 175, 265; *Weggs* v. *Kreugel,* 28 N. M. 24, 205 Pac. 730; *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 Ga. 787, 102 S. E. 528; *Devine* v. *Clark,* 198 Mass. 56, 84 N. E. 309; *Lays* v. *Hurley,* 215 Mass. 582, 103 N. E. 52; *McLagan* v. *Brown,* 11 Ill. 519.) Thus it is said in *Devine* v. *Clark,* above: "The lien arises out of the circumstances under which the work is done and the materials are furnished, and it continues [under a statute requiring the filing of claim within thirty days] for 29 days at least after the lienor stops upon the job, without the filing of any statement whatever." The lien constitutes an interest in the property; "the filing extends its life and preserves it."

"The lien attaches to the structure as the labor is performed or the material is furnished and exists with all of its force at all times between the beginning of the performance of labor or the furnishing of material until the expiration of the time within which notices of lien may be filed." (17 Cal. Jur. 150, and cases cited.)

The true function of the lien is to *prevent* subsequent alienations and encumbrances, except in subordination to itself. (*Watkins* v. *Wassell,* 15 Ark. 73.)

It is therefore apparent that there is no necessity for invoking the doctrine of "relation back" on the filing of the claim or statement, in order to construe such a statute as ours as giving a lien from the time the labor was performed or the material furnished; such construction is compelled by the very nature of the lien given. But, as labor may be performed or material furnished from time to time during the progress of construction or development, a single mechanic or materialman may be compelled, in the absence of a statute to the contrary, to perfect a number of liens, and other liens, encumbrances or mortgages may attach to the property between performance of labor, or deliveries. The stricken clause originally in section 8375 protected the mechanic or materialman from loss of

security in this manner, by providing that the lien shall be preferred over such other encumbrances "which may attach * * * subsequent to the *commencement*" of the furnishing of the supplies. Thus the lien, under the original statute, did "relate back" to a time prior to that on which it might attach but for the clause omitted. The utmost effect that the omission of this clause from the present statute can have is to remove this preference and invoke the general construction that is heretofore indicated.

"Under a few statutes the lien dates only from the recording of the notice, but it is effective from an earlier date as against purchasers and creditors with notice, as well as against the owner, and any purchaser or creditor whose interest arises or is created while the construction or repair work is in progress is deemed to be a purchaser or creditor with notice." (40 C. J. 265, and cases cited.)

It is the duty of those purchasing, or taking liens on, property under construction or on which improvements are being made, to make inquiry to ascertain whether or not the property is encumbered by mechanics' or materialmen's liens, and such parties, having knowledge of the fact that the work is going on, are charged with constructive, if not actual, notice of any such lien as has attached to the premises. (*Clark* v. *Moore,* 64 Ill. 273; *Austin* v. *Wohler,* 5 Ill. App. 300.)

From the record it is clear that each of these appealing ██ defendants was well aware at all times of the progress of drilling on the White leasehold, and that the six months allowed for the filing of liens (Chap. 152, Laws 1923) had not expired at the time each attempted to acquire a portion of the property to which plaintiff's lien attached. If the question of bona fides enters into the question at all, each of these defendants would come under the above rules.

Whether "fixtures" or "appliances," the joints of casing in dispute were "used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished" and were "upon the leasehold" at the time the lien attached. The casing is covered by the lien.

7. The next question for consideration is as to whether or not the money judgment against these appealing defendants can stand in face of the fact that the complaint does not specifically allege conversion of the casing by them, and contains no prayer for a money judgment.

The complaint, after alleging that the casing described was owned by White and Winther and was on the leasehold at all times mentioned, alleges (a) : That the Davis Supply Company "purchased or pretended to purchase from White and Winther, or from some person or persons acting or pretending to act in privy with them, the 1,000 feet of ten-inch casing" and "is now in possession thereof," and that the casing so removed was of the value of $1,000; (b) like facts as to Chamberlain's removal of 1,800 feet of 8¼-inch casing, of a value of $1,800; and (c) that, in February, 1930, Nadeau caused an execution to issue and·to be levied upon certain of the casing, without describing it or fixing a value, and that his lien or claim is subject to and inferior to the lien of the plaintiff.

Each of the parties mentioned by answer set out his claim to the casing removed from the leasehold, and issue was joined by replies, as above noted.

As to all liens of this class the statute provides a method of foreclosure without suit (sec. 8385, Rev. Codes 1921), and also contemplates an ordinary action at law for its enforcement (sec. 8345, Id.). If the statutory method of enforcement is adequate, it is exclusive and must be pursued (37 C. J. 342) ; but if the remedy provided will not reach the property to which the lien attaches, as the district courts possess general jurisdiction at law and in equity and "have all the means necessary to carry that jurisdiction into effect," the court may adopt any suitable method of proceeding "which may appear most conformable to the spirit of this Code." (Sec. 8882, Rev. Codes 1921; *In re Stevenson's Estate,* 87 Mont. 486, 289 Pac. 566.)

Had the plaintiff been entitled to the immediate possession of the property wrongfully removed from the leasehold, an action at law for its conversion could have been instituted

(*Moore* v. *Crittenden*, 62 Mont. 309, 204 Pac. 1035) ; but, as it was not entitled to such possession, such an action would not lie. (*United States Nat. Bank* v. *Great Western Sugar Co.*, 60 Mont. 342, 199 Pac. 245.) There being, therefore, no statutory remedy available, the proper remedy was to proceed in equity to fix the lien upon the property or its proceeds in the hands of those who had removed it (37 C. J. 342, sec. 67, and cases cited), and a court of equity, having secured jurisdiction, will retain it for the purpose of awarding complete relief. (*Stevens* v. *Equity Mutual Fire Ins. Co.*, 66 Mont. 461, 213 Pac. 1110; 1 Pomeroy on Equity Jurisprudence, 4th ed., 374, sec. 237; *Brewer* v. *Oil Well Supply Co.*, 126 Okl. 108, 258 Pac. 866.) In such suit, when it is shown that third parties have deprived the lienor of the right to foreclosure and sale of the security for the satisfaction of the debt, the court may award compensation to the plaintiff "measured by the amount of the debt provided it does not exceed the value of the security lost." (*Moore* v. *Carey*, (Tex. Com. App.) 30 A. L. R. 1247, 269 S. W. 75; *Brewer* v. *Oil Well Supply Co.*, above; Mills & Willingham on Law of Oil and Gas, 350. See, also, secs. 8689, 8691, Rev. Codes 1921.)

Under the issues as framed, the court, exercising its equitable jurisdiction, had the power to render money judgments against these appealing defendants. It is immaterial that the prayer of the complaint did not ask for such relief.

8. The Davis Supply Company contends that the money judgment against it is erroneous, as it acted as agent for McClure. The evidence shows that it removed the casing from the leasehold to its sales yards and commingled it with other like casing, sold a part, and could not tell what part was left or what casing in its yards was so taken. Its agreement with McClure was that it would sell the casing, satisfy McClure's debt to the company, pay his indebtedness to a bank, and pay over to him any balance left. Whatever the effect of this arrangement, the conversion shown warranted the judgment to the extent of the value of the casing so taken.

"The fact that one acted as an agent for another in converting the property of a third person is clearly no defense on the part of the agent, even though he acted within the scope of his authority and was ignorant of his principal's want of authority." (26 R. C. L. 1139; *De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586.)

9. Appellant Nadeau contends that the plaintiff is estopped from asserting its claim as against him. This contention is based upon a conversation had with Jones, the manager of the plaintiff company. Nadeau testified that in November, 1929, he informed Jones that he was getting anxious about the money he had coming from White and Winther and was contemplating "tying them up," but would like to have this plaintiff go in with him, as it would lessen the cost, and that Jones refused, stating that he thought the plaintiff would be taken care of and was of the opinion that if Winther did not pay, White "was good for it." Nadeau further testified that Jones "didn't talk favorable nor he didn't say anything against" the witness bringing suit. Asked if he would have brought his action if he had not had the · conversation, he replied, "No, I don't think I would."

The conversation detailed shows the mere expression of an opinion on the part of Jones to the effect that the plaintiff would be taken care of, and falls far short of bringing the case within the rules laid down for the proof of an estoppel. (21 C. J. 1142; *Waddell* v. *School District,* 74 Mont. 91, 238 Pac. 884; *Lindblom* v. *Employers' L. Assur. Corp.,* 88 Mont. 488, 295 Pac. 1007.)

10. Chamberlain asserts that, as the proof failed to show that he had disposed of the casing taken by him from the leasehold, a money judgment should not have been entered against him. This would be true had the plaintiff sued Chamberlain in claim and delivery or replevin, but where there has been an unlawful taking of personal property, the wronged party usually has the option of bringing an action either for its specific recovery, or an action of trover for its conversion. (24 Cal. Jur. 1934.)

"The detriment caused by the wrongful conversion of personal property is presumed to be: 1. The value of the property at the time of its conversion, with the interest from that time. * * * " (Sec. 8689, Rev. Codes 1921.) That the wrongdoer has, or has not, placed it out of his power to restore the converted property, is not a necessary element of proof in an action for conversion. (*Klind* v. *Valley County Bank,* 69 Mont. 386, 222 Pac. 439.)

It is true that plaintiff's prayer for relief asks that the property to which the lien attached be sold, and that "if the defendants * * * have disposed of or destroyed" the property, they be required to account to the plaintiff for its reasonable value; but the prayer is no part of the complaint, and, in a suit in equity, the court may award such relief as seems just and proper. The complaint itself, as heretofore shown, alleges that these defendants claim some right, title or interest in the property, which is inferior and subordinate to plaintiff's lien. On ample proof the court found that Chamberlain converted the 8¼-inch casing to his own use and fixed the value thereof. This finding warranted the money judgment rendered.

Finding no reversible error in the record, the judgment is affirmed as to each of the appealing defendants.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied July 5, 1932.