No. 13429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

ROBERT J. HOSTETTER and ELDON
H. LEEP, d/b/a DUTCH TOUCH,

      Plaintiffs and Appellants,

-vs-

INLAND DEVELOPMENT CORPORATION OF
MONTANA, a corporation, and BIG SKY
OF MONTANA, INC., a corporation,

      Defendants and Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial
           District
           Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Ben E. Berg argued and Richard J. Andriolo argued,
         Bozeman, Montana

    For Respondents:

        Thomas I. Sabo, Bozeman, Montana
        Brown, Pepper and Kommers, Bozeman, Montana
        Gene I. Brown argued, Bozeman, Montana

    For Amicus Curiae:

        J. David Penwell argued, Bozeman, Montana
        Holter, Heath and Kirwan, Bozeman, Montana

---

                Submitted:  January 11, 1977

                Decided: MAR 1 5 1977

Filed: MAR

*Thomas J. Kearney*
                    Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from the district court, Gallatin County, denying appellants' forclosure on a mechanic's lien.

On April 22, 1974, appellants, doing business as Dutch Touch, entered into a contract with Inland Development Corporation of Montana, a subsidiary of Inland Construction Corporation of Minnesota. Inland Development was the primary contractor responsible to Big Sky of Montana, Inc. for the Glacier Condominium Project located in Meadow Village at Big Sky, Montana. The project consisted of 14 buildings which housed 64 condominium units. The Dutch Touch contract involved the construction of ceramic bathtub enclosures in each individual unit, with no work on the common areas to be performed. This was a single contract, the basis of payment to be the total number of square feet of tile laid. Dutch Touch commenced work on this contract during April 1974.

On August 20, 1974, Big Sky filed and recorded a declaration of unit ownership covering the Glacier Condominiums. During September, October, and November, 1974, Big Sky sold 18 of the 64 condominium units to third parties.

Dutch Touch completed the tile work on March 24, 1975, claiming the amount due for labor, material, and supplies to be $14,554.60. As of June 18, 1975, Dutch Touch had received $13,038.12, leaving $1,516.48 unpaid. On June 18, 1975, Dutch Touch filed a single mechanic's lien for the unpaid balance upon the real property and premises encompassing the 14 buildings and 64 units of the Glacier Condominiums.

On August 19, 1975, Dutch Touch initiated a forclosure action in district court seeking a personal judgment against Inland Development on the contract and enforcement of its lien against the interest of Big Sky in the Glacier Condominiums. A

lis pendens was also filed at this time.

A third party action was filed by Big Sky against Inland Construction on the primary contract. The trial on this third party complaint was suspended until the determination of the lien foreclosure.

The district court, sitting without a jury, entered judgment against Dutch Touch upon the following conclusions of law: 1) That the Glacier Condominium Project became subject to the provisions of the Montana Unit Ownership Act, sections 67-2301 et seq.,/1947, by reason of the filing of the declar-R.C.M. ation by Big Sky on August 20, 1974; 2) that a lien covering the entire project was invalid under section 67-2324, R.C.M. 1947; and 3) that Dutch Touch failed to establish a lien against any individual unit in the Glacier Condominium Project.

Two issues are presented for review: 1) Was Dutch Touch's single lien rendered invalid when Big Sky filed the declaration? 2) Was Dutch Touch entitled to foreclose against only those units owned by Big Sky for the entire amount of the lien?

This is a case of first impression, the interpretation of section 67-2324, R.C.M. 1947, as it relates to a subcontractor's lien arising from work performed and materials supplied during the initial construction of a condominium project.

The interest in unit ownership legislation was generated by federal legislation making Federal Housing Administration insurance available for condominiums, provided that state law concerning unit ownership existed. 12 USCS § 1715 y(a). FHA then provided a Model Act which many states, including Montana, followed. The primary purpose of this condominium legislation is to insure the compatability of such housing projects with pre-existing law. 77 Harvard L. Rev. 777 (1964).

Under the pre-existing lien law of Montana, Dutch Touch would be entitled to a blanket lien effective against the entire condominium project. This is so since the work was performed under one contract, and not a series of separate contracts for each unit. Caird Eng. Works v. Seven-Up Min. Co., 111 Mont. 471, 111 P.2d 267 (1941).

We must now determine what effect subjecting the property to the Montana Unit Ownership Act has upon the lien of Dutch Touch.

Section 67-2324, R.C.M. 1947, states:

"(1) Subsequent to recording a declaration and while the property remains subject to sections 67-2302 to 67-2342, no lien shall arise or be effective against the property. During such period liens or encumbrances shall arise or be created only against each unit and the undivided interest in the common elements appertaining thereto, in the same manner and under the same conditions as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership.

"(2) No labor performed or materials furnished with the consent or at the request of a unit owner, his agent, contractor or subcontractor, shall be the basis for the filing of a mechanic's or materialman's lien against the unit of any other unit owner not consenting to or requesting the labor to be performed or the materials to be furnished, except that consent shall be considered given by the owner of any unit in the case of emergency repairs thereto performed or furnished with the consent or at the request of the manager.

"(3) If a lien becomes effective against two or more units, the owner of each unit subject to such a lien shall have the right to have his unit released from the lien by payment of the amount of the lien attributable to his unit. The amount of the lien attributable to a unit and the payment required to satisfy such a lien, in the absence of agreement, shall be determined by application of the percentage established in the declaration. Such partial payment, satisfaction or discharge shall not prevent the lienor from proceeding to enforce his rights against any unit and the undivided interest in the common element appertaining thereto not released by payment, satisfaction or discharge."

This is one section of the entire Unit Ownership Act and it is the duty of this Court to interpret it in such a manner as to insure coordination with the other sections of the Act,

and fulfill legislative intent. Doull v. Wohlschlager, 141 Mont. 354, 377 P.2d 758 (1963); Aleksich v. Industrial Acc. Fund, 116 Mont. 127, 151 P.2d 1016 (1944).

Reading the Act in its entirety, it becomes apparent that there are safeguards to insure that builders, mechanics, and materialmen involved in the initial construction of a project are to be fully compensated before individual units are sold. Furthermore, Big Sky failed to comply with these safeguards.

Section 67-2303.1 allows the sale of units prior to the completion of construction of the "building", which the Act defines as a multiple unit building. However, the money from such sales must be placed in escrow. Disbursements cannot be made from this escrow fund until completion of the building and common elements or compliance with section 67-2303.2 through 2303.6, whichever occurs first. In any event, such disbursements are to be only for cost of construction, legal, architectural and financial fees, and other incidental costs of the project. Section 67-2303.1(4) then specifically states:

> " * * * The balance of the moneys remaining in the fund shall be disbursed <u>only</u> upon completion of the building, <u>free and clear of all mechanic's and materialmen's liens</u>. * * * " (Emphasis added.)

Big Sky did sell 18 units prior to completion of construction, however it failed to deposit the moneys from these sales in an escrow account as required, and failed to pay this lien.

Section 67-2323 states:

> "<u>Blanket mortgages and other blanket liens affecting unit at time of first conveyance or lease</u>. At the time of the first conveyance or lease of each unit following the recording of the declaration, every mortgage and other lien affecting such unit including the undivided interest of the unit in the common elements, <u>shall be paid and satisfied</u> of record, or the unit being conveyed or leased and its interest in the common elements <u>shall be</u> released therefrom <u>by partial release duly recorded</u>." (Emphasis added.)

- 5 -

Again Big Sky failed to comply with this provision. At the time of its first sale Big Sky had not satisfied this lien nor did it obtain a partial release as required.

The lien of Dutch Touch arose, attached and became effective against the property when work was commenced, the filing merely perfects the lien. Continental Supply Co. v. White, 92 Mont. 254, 266, 12 P.2d 569 (1932) states:

> " * * * The lien constitutes an interest in the property; 'the filing extends its life and preserves it.
>
> "'The lien attaches to the structure as the labor is performed or the material is furnished and exists with all of its force at all times between the beginning of the performance of labor or the furnishing of material until the expiration of the time within which notices of lien may be filed.' (Citation omitted.)
>
> "The true function of the lien is to prevent subsequent alienations and encumbrances, except in subordination to itself."

See also Blose v. Havre Oil & Gas Co., 96 Mont. 450, 461, 31 P.2d 738 (1934). Furthermore, this lien was originally effective as a blanket lien against the entire project under the Caird case. We disagree that this lien was rendered invalid by the filing of the declaration, as held by the district court. Instead, we adhere to the rationale of the Wisconsin Supreme Court when they faced the issue in Stevens Const. Corp. v. Draper Hall, Inc., 73 Wis.2d 104, 242 N.W.2d 893, 898 (1976). The Wisconsin court was also confronted with a mechanic's lien based upon work performed during initial construction and a Unit Ownership Act with a provision the same as our section 67-2324, R.C.M. 1947. The Wisconsin statute, § 703.09 W.S.A., is identical to our section 67-2324, with their § 703.09(2) the same as our section 67-2324(3).

Their decision in Stevens states:

> "Stevens and The Bruce Company argue that their liens arose and became effective when the excavations began in September of 1971. They contend

that no distinction should be made between when
a lien arises and when a lien becomes effective.
We agree with this proposition but it makes no
difference in terms of the rights of the claimant-
appellants in this case.  The word 'effective',
in the context of construction liens, should be
interpreted to mean 'capable of bringing about an
effect.'  A construction lien is capable of bring-
ing about an effect at the time it arises, that
is, when 'substantial excavation for the founda-
tions' of the new project begin, as provided in
sec. 289.01(4), Stats.  The later events of giving
notice and filing, as required by sec. 289.06,
merely preserve and perfect a lien which is
already effective in the sense of being capable of
having an effect upon the liened land.

"Acceptance of this position of appellants does not
mean that sec. 703.09(2). Stats., is inapplicable to
the facts of this case.  On the contrary, we conclude
that this subsection still governs, even though the
cliamants' liens were first 'effective' in September
of 1971, before the condominium declaration was
recorded.

"Subsection (2) provides that a proportional lien
occurs whenever 'a lien becomes effective against
2 or more units.'  Obviously the most frequently
occurring situation in which a lien will become
effective against two or more units is when repairs
are made to the common areas of the condominium
unit, and left unpaid.  But we conclude that a lien,
originally effective as a blanket lien against the
whole property, becomes effective against two or more
units within the meaning of sec. 703.09(2), Stats.,
when the property is made subject to the provisions
of ch. 703 by the filing of a condominium declara-
tion before the initiation of foreclosure proceedings
against the property as a whole.

"Thus it is not critical that the filing of the lien
claims came after the condominium declaration was
filed, as the trial court decided.  Even if the claims
were filed before the condominium declaration was
recorded, only proportional liens would attach to the
individual units.  On the other hand, if foreclosure
proceedings are begun before the condominium declara-
tion is recorded, and a lis pendens filed, the situ-
ation is frozen so that the subsequent recording of
a declaration does not transform the blanket lien
into a proportional lien on individual units."

Likewise, the mechanic's lien filed by Dutch Touch was

not rendered invalid when Big Sky filed its declaration, but

remained a valid single lien, which was proportionately effective

against each unit, pursuant to section 67-2324(3), R.C.M. 1947.

The second issue presented involves the enforcement of

the lien once it is established.  The foreclosure of a mechanic's lien is governed by the rules of equity.  Cole v. Hunt, 123 Mont. 256, 211 P.2d 417 (1949).  The general rule is that a blanket construction lien against an entire property consisting of several parcels cannot be enforced in toto against less than all of such parcels.  Annot. 68 A.L.R.3d 1300.  The reason is that it would be inequitable to burden some lesser portion of the liened premises with charges for labor and materials which were not actually furnished to that particular parcel.  Consequently, this single lien, proportionately effective against each unit, would only be enforceable against each unit proportionately.  It is the duty of those purchasing, or taking liens on, property under construction or on which improvements are being made, to make inquiry to ascertain whether or not the property is encumbered by mechanics' or materialmen's liens, and such parties, having knowledge of the fact that the work is going on, are charged with constructive, if not actual, notice of any such lien as has attached to the premises.  Continental Supply Co. v. White, supra.

However, any unit owners, other than Big Sky, whose property is subject to Dutch Touch's mechanic's lien, were put into that position by Big Sky's total disregard of the provisions of the Unit Ownership Act concerning mechanics' liens and pre-completion sales.

Big Sky failed to place the proceeds of these sales, made prior to completion of construction, into an escrow account, as required by section 67-2303.1, R.C.M. 1947.  Therefore, the mechanics' liens, effective against each unit so sold, were not satisfied from the escrow fund as contemplated by section 67-2303.1. Big Sky further ignored section 67-2323, R.C.M./1947, whereby every blanket lien or blanket mortgage must be satisfied before the first conveyance or lease of a unit, or a partial release for

- 8 -

such unit obtained and recorded.

Equity will grant the relief sought when in view of all circumstances to deny it would permit one of the parties to suffer a gross wrong at the hands of the other party who brought about the condition. Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432 (1965); Dutton v. Rocky Mountain Phosphates, 151 Mont. 54, 438 P.2d 674 (1968). This Court cannot ignore the fact that this situation would never have occurred, had Big Sky fully complied with the Unit Ownership Act.

Equity demands that Dutch Touch be allowed to satisfy the entire amount of its lien first from those units retained by Big Sky.

Thereafter, should any amount of the lien remain unsatisfied, Dutch Touch may seek proportionate enforcement of such balance against the 18 units previously sold by Big Sky after the owners of these units are made parties to the action. In the record there is a motion by Big Sky to join these unit owners as parties defendant pursuant to Rule 19, M.R.Civ.P. This motion was never ruled upon by the district court. The Committee Note to Rule 19 states that it is clear that whenever feasible the persons materially interested in the subject of an action should be joined as parties so that they may be heard and a complete disposition made. Such is the case of these unit owners should Dutch Touch have to enforce any portion of the lien against their units in the event the units retained by Big Sky do not satisfy the lien. For this reason the motion of Big Sky should have been granted.

This judgment of the district court is vacated and this cause remanded to rehear the forclosure action in compliance with this decision.

_____
Chief Justice

- 9 -

We concur:

_Chaunce R. Haswell_

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
        Justices